# CHARLESTON.

## *Ex Parte* Beavers.

### Submitted March 14, 1917.    Decided March 20, 1917.

1. Divorce—*Alimony—Contempt—Commitment.*

    To obtain his liberty on the ground of his inability to satisfy a decree for alimony, made in a suit for divorce, in which the court entering it had full and complete jurisdiction, a party committed on an attachment for his contumacious refusal to pay the amount so decreed against him, must purge himself of the contempt, as far as possible, and make his application for such relief in the court in which he was committed.   (p. 36).

2. Habeas Corpus—*Release—Right to.*

    Without having done so, and clearly and fully proved his inability to satisfy the decree, he is not entitled to a discharge on a writ of *habeas corpus.*   (p. 37).

3. Divorce—*Alimony—Order—Sufficiency.*

    Lack of a recital in the order of commitment for such contempt, of a finding of the defendant's ability to pay the amount decreed against him, does not vitiate the order, nor rebut the presumption in favor of the correctness thereof.   (p. 37).

4. Same—*Alimony—Contempt—Commitment.*

    Lack of a limitation upon the period of imprisonment adjudged by way of execution, to compel satisfaction of a decree for the payment of alimony, does not make it a decree of perpetual imprisonment, nor render the punishment incident thereto cruel or unusual within the meaning of constitutional provisions inhibiting such punishment.   (p. 38).

Original application by C. C. Beavers for a writ of habeas corpus against D. C. Collins, jailer, etc.

         *Writ denied, and petitioner remanded.*

*Sanders & Crockett* and *A. G. Fox,* for petitioner.

*M. O. Litz,* for respondent.

Poffenbarger, Judge:

Seeking liberation from imprisonment by an order made in an attachment for failure and refusal to pay alimony decreed against him, in a suit for divorce, C. C. Beavers ob-

tained a writ of *habeas corpus*, on his petition exhibiting therewith all the orders made and entered in the cause. The return to the writ relies upon the order of commitment as justification of his detention.

By an order entered, April 8, 1914, a divorce *a mensa et thoro* was awarded his wife, and it was further adjudged, ordered and decreed that she recover from him the sum of $1,000.00, for the maintenance of herself and her eight infant children, and her costs including a $20.00 attorney's fee. A decree of absolute divorce was entered, March 13, 1915. Nothing having been paid, a rule in contempt was awarded, September 17, 1915. An attachment was awarded, March 2, 1916, and another June 1, 1916, under which an arrest was made. On a bond in the penalty of $2,000.00, conditioned for his appearance, June 13, 1916, he was released until that date. On his appearance, he was committed to the jail of McDowell County, until he should satisfy the decree for said sum of money, by an order reciting that he had "failed and refused to pay any of the alimony so decreed against him" and had, "in violation of the order of injunction" awarded against him in the cause, "disposed of all of his property in the State of West Virginia and moved to the State of Virginia." After having remained in jail six months, he was temporarily released on a $1,000.00 bond, on account of impairment of his health, due to confinement. At the expiration of the period of liberation prescribed by the bond, February 13, 1917, he appeared and was again committed.

The order of commitment was clearly remedial in its purpose. Although it recites violation of an injunction, it cannot be interpreted as resting upon that offense. Its plain purpose is compulsion of payment of the alimony and that only. It says nothing about the costs or attorney's fees. Payment of the alimony will fully satisfy the condition of the order and effect the prisoner's liberation.

Alleged inability to pay the amount decreed is the principal ground of relief. Both the verified petition and an affidavit filed, in resistance of the matters set up in the return assert it. It appears from the latter, however, that the relator could have paid a considerable portion thereof, if he

had desired to do so. At the date of the decree, he was the owner of a house and lot worth more than $2,000.00. Before that date, he had contracted a sale of this property to one Price. Owing to Price's insolvency, the contract was rescinded and the purchase money notes returned. Then the property was conveyed to W. F. Harman for a recited cash consideration of $2,250.00. This occurred only a few days before entry of the decree and after Price had been enjoined from payment of the purchase money to Beavers. It is admitted that Beavers received $1,500.00 in cash from Harman, but he swears it was necessary for him immediately to use $700.00 or $800.00 of that sum in the payment of debts and that the residue has been lost in unfortunate business ventures and expended for the necessaries of life.

Whether this defense was set up in resistance of the order of commitment, does not appear. None of the proceedings except the orders have been brought up. There is a presumption of correctness in favor of the order. That the cause of commitment was within the jurisdiction and power of the court, is not denied. The order of commitment was made more than two years after his property was sold and, presumptively, after the purchase money was received. If Beavers did not set up and rely upon his lack of ability, in resistance of the order, he should have done so. If he then filed an affidavit, such as he has filed here, or orally testified to its purport and effect, a cross-examination and other evidence may have disclosed falsehood therein, amply justifying the action of the court thereon. His unwillingness to pay, if he could, clearly appears from the circumstances. In anticipation of a decree against him, and to render it unavailing, he attempted to convert his property into money, by a sale to Price. That attempt having been thwarted by an injunction, he rescinded the contract and conveyed to another party, and thus evaded the injunctive process of the court. He makes no pretence of having endeavored to pay the wife a cent of the $1,500.00 he admits having received almost contemporaneously with the entry of the decree. He had no intention or desire to pay her anything and was determined to evade it, if possible. His conduct will bear no other inter-

pretation. Any defense he may have made was no doubt read in the light of his contumacious conduct. He may have been wilful and defiant, refusing to make any attempt to purge himself of the contempt he had committed. As to all this the petition and affidavit are silent.

The order cannot be reviewed for mere error on a writ of *habeas corpus*. "Where the order is made, the process issued, or the judgment or decree rendered by a court having authority or jurisdiction in the matter, neither the regularity of the proceeding nor error committed by the judge or court in the exercise of its jurisdiction can be considered on habeas corpus." Church, Hab. Cor. sec. 331; Bailey, Hab. Cor. p. 265, sec. 73; *Yates* v. *Lansing,* 5 Johns (N. Y.) 282; *Ex parte Evans,* 42 W. Va. 36. However erroneous the court's finding of facts may have been, it cannot be inquired into by this proceeding.

If the inability of the relator to pay the amount decreed against him or any part thereof can be clearly established, whether it existed at the date of the order or not, he may be entitled to a discharge from custody, for the law does not contemplate unreasonable imprisonment by way of punishment, nor imprisonment as process for compulsion of payment, under circumstances rendering obedience of the decree impossible. But the application for relief on that ground should be first made to the court below. A party cannot defy the authority of a court in which he is a litigant, disobey its process and orders, go to jail for his contempt of its authority and then obtain his liberty from another court, without having made the semblance of an apology. He must submit himself to the authority of the trial court, by purging himself of the contempt and then make an application to it for such relief as he is entitled to claim. *Ex parte Spencer,* 83 Cal. 460; *Ex parte Wilson,* 75 Cal. 580; *Ex parte Cotrell,* 59 Cal. 417; *Galland* v. *Galland,* 44 Cal. 475, Oswald, Contempt, p. 253. "It is the court whose mandate has been violated and whose dignity has been brought into disrepute by the commission of the contempt before which relief from punishment should, in the first place, be sought by a motion therein on be-

half of the contemnor to vacate the proceedings.'' 4 Ency. Pl. & Pr. 807; *People* v. *Murphy,* 1 Daly (N. Y.) 462.

Neither the petition nor the affidavit discloses any submission to the authority of the court below, nor any willingness to submit. While there is no express declaration of defiance or insubordination, there is complaint of alleged injury and wrong done by the court. No disavowal of wilful disobedience or intentional disrespect toward the court nor any application to it for liberation is disclosed. The relator has not exhausted his remedy in the court below, nor put himself in a situation to be heard here. He can at least purge himself of his contempt. Whether the court has properly decided he is able to pay or not, he is bound to submit to its authority. He is within its jurisdiction. It is often necessary to submit to erroneous decisions. He cannot make his apology here, nor elsewhere than in the court whose authority he has defied. After having done that and there sought the relief he now asks, he may be in a situation to obtain his discharge here on a writ of *habeas corpus.*

''Whenever the party charged with a contempt is manifestly unable to perform the act or obey the order for a disobedience to which he is proceeded against, he may successfully interpose, as a defense in such proceedings, said inability to obey.'' 4 Ency. Pl. & Pr. 790.

Failure of the order to recite a finding of ability to pay does not invalidate it. Under our practice, there is a presumption in favor of the correctness of judgments and decrees entered by courts of general jurisdiction. This is rebutted, of course, by a disclosure of lack of jurisdiction on the face of the record, but a recital of a court's finding of fact is not ordinarily jurisdictional, and lack thereof in the order does not rebut the presumption. Contempt procedure, though drastic, is not statutory, nor is the jurisdiction special or limited. The jurisdiction exercised in this cause is an element or factor of general equity procedure.

Lack of a limitation on the period of imprisonment neither makes the order one of perpetual imprisonment nor the punishment cruel or unusual. If the relator can pay the amount decreed against him, he may liberate himself at any moment.

As the courts sometimes say, he carries his own prison keys. If he cannot pay it, he may procure his release by full and clear proof of the fact; but he cannot trifle with the court having jurisdiction over him. His conduct has raised a strong presumption against the good faith of his defense, which he must clearly rebut, in order to free himself.

For the reasons stated, the prisoner will be remanded to the custody of the jailor of McDowell County.

*Writ denied, and petitioner remanded.*