STATE *ex rel.* CHARLES R. VARNER

*v.*

JOSEPH C. JANCO, *Sheriff of
Monongalia County*

(No. 13138)

Submitted September 6, 1972. Decided September 26, 1972.

*Robert W. Dinsmore,* for relator.

*David L. Solomon,* for respondent Goldie Varner.

KESSEL, JUDGE:

In this habeas corpus proceeding instituted in this Court pursuant to its original jurisdiction, Charles R. Varner, the relator, seeks to compel the respondent, Joseph C. Janco, Sheriff of Monongalia County, to release him from custody. The writ of habeas corpus ad subjiciendum was granted by this Court on October 1, 1971, returnable on October 12, 1971, and the relator was

released from custody upon his own recognizance in the amount of $100. The case was continued from time to time until September 6, 1972, when the case was submitted for decision upon the petition, the answer of Goldie Varner, and briefs of counsel, oral argument of counsel having been waived.

Counsel stipulated and agreed that the record and transcript of hearings held in the Circuit Court of Monongalia County in the divorce action, and hearings subsequent thereto, of Charles R. Varner, plaintiff, versus Goldie Varner, defendant, Civil Action No. 4098, could be used as evidence in this case. That record is considered as a part of the record in this case.

The question presented to this Court for decision is whether the relator is in contempt of an order of the Circuit Court of Monongalia County, requiring the relator to pay to Goldie Varner alimony in the amount of $125 a month. The relator alleges in his petition that he is physically and financially unable to comply with the order; that he is totally and permanently disabled; and that, in view of his physical impairment resulting from a "severe heart attack", his incarceration in the county jail amounts to cruel and unusual punishment within the meaning of Article III, Section 5, of the Constitution of West Virginia.

The record in this case discloses that on June 16, 1969, the relator instituted divorce proceedings against his wife, Goldie Varner, in the Circuit Court of Monongalia County. By an order entered on September 18, 1969, judgment was entered by the circuit court dissolving the bonds of matrimony theretofore existing between the relator and his wife, Goldie Varner, and requiring him to pay to her the sum of $125 per month as alimony and $50 per month as support for an infant child, custody of whom was awarded to Goldie Varner. The son has since been emancipated and the payments for him were terminated at that time. At the time the final order in the divorce action was entered, the relator was employed as a

motorman in a coal mine at a monthly salary of $750 and apparently was in good health.

On February 7, 1970, relator married his present wife, Helen Varner; and on February 28, 1970, he sustained a "severe heart attack", as a result of which he is totally and permanently disabled. On April 8, 1970, the relator, by his wife, Helen Varner, filed a petition in the Circuit Court of Monongalia County requesting that the alimony and child support payments which he was required by court order to pay be suspended during the period of his recovery from the heart attack. After a hearing on the petition, the circuit court, on April 22, 1970, ordered the "payments be suspended for the next two (2) weeks."

Following the two-week suspension, the relator failed to resume making his payments of alimony and child support, and on March 17, 1971, Goldie Varner, the former wife of the relator, filed a petition in the circuit court seeking a rule to show cause why the relator should not be held in contempt of the circuit court for his failure and refusal to comply with the circuit court's order respecting alimony and child support payments. Pursuant thereto a rule was issued and a hearing was held on March 31, 1971. At the hearing evidence was adduced and it was found that the relator was $1750 in arrears in his payments and that his wife, Helen, left her employment on February 28, 1971, to care for her husband on the advice of his physician. The relator, who did not appear at this hearing upon the advice of his physician, was given until June 2, 1971, to make the alimony and child support payments then in arrears. Later the matter was continued until June 9, 1971, at which time the circuit court, after another hearing at which the relator did not appear, held "that the plaintiff did not make every reasonable effort to provide for the alimony payments due and payable to the defendant and that the plaintiff has unjustifiably refused to comply with a previous order of this court dated September 18, 1969," and found the relator in contempt of the court. By agreement of counsel the matter was continued again until June 21, 1971, at which time the

relator purged himself of contempt by paying his former wife the sum of $2,100, which was in full payment to that date. The son having arrived at the age of eighteen years, the payments for him had terminated. The relator says he had to borrow this sum of money to make up the back payments.

On June 22, 1971, the relator filed a petition with the Circuit Court of Monongalia County praying that the alimony payments be terminated. The relator alleged that his situation had materially changed since the order of September 18, 1969, in that he was not gainfully employed and that he was totally and permanently disabled and was living on limited disability benefits, and therefore, was unable to comply with the order of the circuit court. Thereafter, Goldie Varner filed a notice in the circuit court, requesting that her monthly alimony payments be increased to $300 a month. On September 20, 1971, the circuit court, after hearing evidence on the matters contained in the petition of the relator and the notice of Goldie Varner, denied the motion of the defendant to increase the alimony payments and denied the petition of the relator to abate the alimony payments. The circuit court ordered that the alimony payments of Goldie Varner of $125 a month be continued until further order of the circuit court. In addition the circuit court ordered that the relator pay to Goldie Varner the alimony payments in arrears for the months of July and August, 1971, which amounted to $250, and which the circuit court ordered be paid on or before September 20, 1971.

On September 22, 1971, Goldie Varner filed a second petition requesting the circuit court to issue a rule to show cause why the relator should not be held in contempt of the circuit court for failure to pay $250, which had been ordered by the circuit court to be paid on or before September 20, 1971. Another payment of $125 became due on September 15, 1971. A rule was issued by the circuit court and made returnable on September 28, 1971. By an order entered on September 29, 1971, the court found that "it was possible for the plaintiff to

comply" with the former order of the court "which the plaintiff had failed to do, except that the plaintiff paid the defendant on September 27, 1971, the sum of $50.00, and after applying said sum to said indebtedness, there remains the sum due from the plaintiff to the defendant, the amount of $325.00, which sum the plaintiff has failed and refuses to pay to the defendant." In the same order the court found the relator guilty of contempt and ordered that he be confined in the Monongalia County jail "until such time that the plaintiff purges himself of said contempt by his payment in full of said alimony payments in the amount of $325.00 and attorney fees (of $50.00) as hereinafter awarded." On October 1, 1971, the relator was released from custody upon a writ of habeas corpus ad subjiciendum granted by this Court.

The record in this case discloses that Goldie Varner and Charles R. Varner, the relator, were married for a period of thirty-five years and that nine children were born to them during this time; that the relator obtained a divorce from his wife by reason of separate places of abode for two years; and that at the time of the divorce he was employed and was making $750 per month. He made his payments until the time he suffered his first heart attack. He has not worked since. At the time he was ordered to be confined in jail, September 29, 1971, he was receiving social security in the amount of $207.60, UMW benefits in the amount of $150, making a total of $357.60 per month. He listed recurring expenses in the total amount of $195 per month itemized as follows: $11 for gas, $10 for electric, $7 for insurance, $9 for insurance, $20 for gasoline, $65 for food, $13 for car insurance, $10 for clothing, and $50 payment on a loan he secured to purge himself of contempt. This leaves the relator with the sum of $162.60 each month. He did not explain what he did with this amount. He lives with his present wife, Helen Varner, in a mobile home and owns a 1970 Ford LTD automobile. The payments on the car and the mobile home have been satisfied by insurance which the relator carried to insure the payments of the loans in the event of his disability.

Goldie Varner has no income and is not employed. During the time she was not receiving alimony payments, she received welfare benefits which were terminated when her youngest child reached the age of eighteen years. She lives in a house situate on a farm of 85 acres which she owns jointly with the relator. She has fixed expenses in the amount of $85 per month, which include $40 for groceries, $18 for electricity, $6 for telephone, $16 for doctor bills, and $5 for insurance. Some of her children live with her at times and occasionally contribute to her support. Her health will not permit her to work at steady employment.

Dr. Edward K. Chung, a cardiologist and professor of medicine at West Virginia University, testified that he has treated the relator for two heart attacks sustained by him within a two-months period; that as a result of the relator's heart condition, he is permanently and totally disabled; that he may do only limited physical exercise; and that any stress, either mental or physical, would be adverse to the relator's heart condition. To the question "What effect incarceration (in jail) would have on Mr. Varner?", he made the following reply: "* * * [A]ny stress, either mental or physical, whatever behind the story is, is no good for anybody who has had a heart attack and this is a future prediction according to our experience as a heart specialist. I think this is very bad for his heart condition and because we cannot predict what will happen exactly, but we can say that this kind of stress is one of the bad ones to have for anybody that had a heart condition."

Section 16, Article 2, Chapter 48 of the Code of West Virginia, 1931, as amended, is as follows:

"All judges and courts of this State, called upon to fix, ascertain and determine an amount as alimony, support or maintenance to be paid by a spouse or to modify any order pertaining thereto, shall take into consideration, among other things, the financial needs of the parties, the earnings and earning ability of the husband and wife, the

estate, real and personal, and the extent thereof as well as the income derived therefrom of both the husband and wife and shall allow, or deny, alimony or maintenance or modify any former order with relation thereto, in accordance with the principles of justice."

Neither the relator nor his former wife have any earnings or earning ability. They jointly own the farm on which she lives. There is no income derived from the farm. He owns the trailer in which he and his present wife live and an automobile. His only income is his social security and his UMW payments which total the sum of $357.60 each month. He shows recurring expenses of $195 each month besides the alimony payments. This leaves him $162.60. Should he make the alimony payments, he would have remaining $37.60 for him and his wife. At the time the alimony was set at $125 per month, the relator was earning $750 per month. His financial condition had greatly changed. This fact apparently was given no weight by the circuit court. The former wife says she needs $85 per month to pay her recurring expenses. Should she get the $125 alimony and pay her recurring expenses, she would have $40 left.

One may be discharged from imprisonment under a contempt order where it is shown that he is unable to pay alimony as directed. 24 AM. JUR. 2d, *Divorce and Separation,* Section 771, page 879; 27B C.J.S., *Divorce,* Section 263, page 132.

The remedy of imprisonment for failure to pay alimony should not be enforced except where it appears that the defendent is contumacious. *West v. West,* 126 Va. 696, 101 S.E. 876. See *Ex Parte Beavers,* 80 W.Va. 34, 91 S.E. 1076.

The physical condition of the relator and the effect incarceration in jail might have upon him are factors which, we believe, must be given great weight. Dr. Chung testified that incarceration would exert stress and that this kind of stress is very bad for anybody that has a heart condition.

In the case of *Sutherland v. Workman*, 119 W.Va. 683, 195 S.E. 856, Point 2 Syllabus holds:

> "Where, by an order of record, a court has abused its discretion in the award of alimony and counsel fees in a divorce proceeding, or a suit for separate maintenance, this court, under its original jurisdiction in habeas corpus, will relieve the injured party from imprisonment on charges of contempt of court for failure to comply with such order."

Considering the greatly reduced income of the relator, being less than one-half of his income at the time of the original award of alimony, and his physical condition, being totally and permanently disabled, we are of opinion to award the writ and release the relator from custody. However, in awarding the writ, we do not pass upon the right of the former wife, Goldie Varner, to a proper allowance of alimony to be made in consideration of all the circumstances of the case and of the parties, and within the spirit of Section 16, Article 2, Chapter 48 of the Code, 1931, as amended, wherein consideration is required to be given to the circumstances and needs of the parties involved.

*Writs awarded.*