STATE *ex rel.* CHARLES DEE TREMBLY

*v.*

CHARLES J. WHISTON, *Sheriff of Monongalia County*

(No. 13626)

Decided December 19, 1975.

*David L. Solomon* for petitioner.

*Julius W. Singleton, Jr.,* for Mary Louise Trembly Cekala.

FLOWERS, JUSTICE:

In this original proceeding in habeas corpus, the relator, Charles D. Trembly, seeks release from the Monongalia County Jail, where he was confined for contempt of court. The contempt arose from the relator's failure to comply with an order of the Circuit Court of Monongalia County, requiring him to pay monthly child support and to bear the entire expense of his daughter's college education. The relator challenges the contempt order on the ground that the circuit court had no jurisdiction to modify or alter the amount of child support established by a property settlement agreement which had been ratified and confirmed earlier by the court in a divorce decree. Additionally, the relator maintains that the circuit court abused its discretion by requiring increased payments which he is financially unable to make.

Following their separation and in apparent anticipation of their divorce, Charles D. Trembly and Mary Louise Trembly, on October 7, 1969, executed a property settlement agreement. The terms of that agreement re-

quired Charles Trembly to pay $200.00 a month as support and maintenance for his eleven-year-old daughter, Ingrid Crystal Trembly, and to "aid and assist the said infant child in paying her tuition, books and other necessary expenses" at an institution of higher education after her graduation from high school.

The marriage between the parties was dissolved by order of the Circuit Court of Monongalia County on October 13, 1969. The property settlement agreement was "ratified and confirmed" and recited verbatim in the divorce decree.

The child support payments were made from 1969 until August of 1975. During this time, Mary Louise Trembly had remarried and established a home for herself and her daughter in Washington, D.C. Charles D. Trembly remarried and moved to Preston County, West Virginia.

In the spring of 1975, a dispute apparently arose between Mary Louise Trembly and the relator, concerning the interpretation of the "aid and assist" provision of the property settlement agreement. On June 3, 1975, upon the petition of Mary Louise Trembly Cekala, the circuit court issued a rule requiring the relator to appear and show cause why he should not be held in contempt for failure to comply with the provision of the court's prior order pertaining to "tuition, books and other necessary expenses for attendance [of his daughter] at college * * *."

The court heard the testimony of both Mary Louise Cekala and Charles Trembly and the arguments of their counsel and received documentary evidence. On the 7th day of July, 1975, the court entered an order which made no finding as to contempt but which required the relator to pay to his daughter the sum of $996.50 prior to August 1, 1975, and the same amount again prior to January 15, 1976. Together these payments represented the full cost of tuition, room and board and books for the 1975–76 academic year at West Virginia University. The relator was further ordered to reimburse Mary Louise

Cekala $199.00 for college testing and application fees and to continue the payment of $200.00 monthly child support.

The relator failed to make these payments and a new petition for contempt was filed on August 11, 1975. After the entry of an order holding him in contempt and remanding him for confinement in the Monongalia County Jail, the relator brought this original proceeding in habeas corpus.

I

The relator contends that since the property settlement agreement included provisions for child support, the circuit court, having previously "ratified and confirmed" the agreement, was without jurisdiction to modify or alter these provisions. We cannot agree.[1]

*W. Va. Code*, 48-2-15, as amended, provides:

"'* * * and upon decreeing the annulment of a marriage, or a divorce, the court may make such further decree as it shall deem expedient, concerning the care, custody, education and maintenance of the minor children * * * and the court * * * may also from time to time afterward, on the verified petition of either of the parties, revise or alter such decree concerning the care, custody, education and maintenance of the children * * *."

The statute by its own terms contemplates continuing jurisdiction to modify an order to provide for the support, maintenance and education of a minor child. *See, Allen v. Allen,* 138 Cal. App. 2d 706, 292 P.2d 581 (1956); *Bugden v. Bugden,* 225 Ga. 413, 169 S.E.2d 337 (1969).

---

[1]It is not necessary to determine whether the property settlement agreement was "merged" in the decree so that enforcement of its terms could be sought in a contempt action rather than a civil action for breach of contract. As we have noted, the relator was not held in contempt of the October, 1969, decree but of a new decree entered July 7, 1975.

This jurisdiction is not abrogated or limited by the existence of child support provisions in a property settlement agreement which has been "ratified and confirmed" in a divorce decree. 24 Am. Jur. 2d *Divorce and Separation* §845, pp. 958-59; 27B C.J.S. *Divorce* §322(1)(b), pp. 682-85. *See generally, Corbin v. Corbin,* W. Va., 206 S.E.2d 898 (1974). The power of a court to modify a decree for the support of minor children cannot be defeated by an agreement between the parents. *Phillips v. Phillips,* 93 Idaho 384, 462 P.2d 49 (1969); *Hayes v. Hayes,* 75 S.W.2d 614 (Mo. App. 1934); *Parkey v. Parkey,* 371 P.2d 711 (Okla. 1962); *Grosz v. Grosz,* 506 P.2d 46 (Wyo. 1973). *See Corbin v. Corbin, supra; Bailey v. Bailey,* 127 W. Va. 826, 35 S.E.2d 81 (1945).

Cases which resolve mixed issue of property rights and alimony between litigants *sui juris* have no bearing on the issue presented here. Continuing jurisdiction under *W. Va. Code,* 48-2-15, as amended, in matters of child custody and support is based on sound public policy. The welfare and interest of minor children must be protected by the courts. They are not independently represented in connection with any property settlement agreement and they are not parties to such an agreement. *Grosz v. Grosz, supra; Parkey v. Parkey, supra.*

## II

Since the court had jurisdiction to alter the amount of child support payable by the relator, we must determine whether the trial court abused its discretion in requiring him to bear the entire expense of educating his daughter in addition to the $200.00 monthly payments. Financial inability to pay, if supported by sufficient evidence, would relieve the relator from imprisonment on charges of contempt of court. *Sutherland v. Workman,* 119 W. Va. 683, 195 S.E. 856 (1938).

At the hearing on July 2, 1975, Mary Louise Cekala testified that her daughter had enrolled in West Virginia University for the fall semester. The university was selected because it was the least expensive of the three schools in which her daughter was interested in attend-

ing. She asked the court to require the relator to pay the following expenses incident to her daughter's education: $186.25 tuition; $100.00 book allowance; $710.70 room and board; $199.00 in previously incurred expenses for entrance fees and testing expenses. In addition to these expenses, which totalled $1,195.95, Mrs. Cekala asked that the relator be required to continue making the $200.00 monthly support payments.

According to her testimony, Mrs. Cekala had undergone surgery for cancer and was unable to assist her daughter financially. She admitted that her request was to require the relator to bear the entire expense of the child's education. She justified her request for continuance of the $200.00 payments on the basis that they were necessary to cover ordinary living expenses, '[e]verything of that nature, and to maintain our home is important too."

At the hearing, the relator testified that he was willing to provide for his daughter's tuition, books and fees and to pay her $200.00 a month. He resisted, however, being required to pay the $710.70 room and board in addition to the $200.00 monthly payments. In the alternative, he offered to have his daughter live with him and to pay all her expenses during her education.

Mrs. Cekala testified that she and her daughter were opposed to any plan which required the child to live with her father. She testified that the relator had no interest in his daughter and that it would be advantageous for her to live in the dormitory.

The relator is an employee of Best, Inc., in Terra Alta, West Virginia. He earns $3.75 an hour and was paid gross earnings of $8,982.00 in 1974. His net earnings, after taxes, averaged $560.00 a month. In addition, he receives $194.00 a month from managing certain properties and $350.00 from rents and mortgage payments due monthly. His approximate monthly average income is $1,100.00. The relator denied receiving any income from

his father's estate, alleging that the properties included in the estate were owned by his mother.

Trembly testified that he incurred the following monthly expenses: $240.00 house payment; $200.00 child support; $23.75 life insurance; $18.50 hospitalization insurance; $40.00 fire and automobile insurance; $100.00 utilities; $60.00 gasoline and car maintenance; $24.00 real estate and personal property taxes; and $200.00 groceries. The relator's monthly expenditures, which included no allowance for clothing, medical and dental expenses, totalled $910.00.

Trembly stated that he was willing to assist the financing of his daughter's education but that he could not bear the entire burden of that expense. This contention is supported by his uncontroverted testimony about his income and expenses. From monthly income of approximately $1,100.00, the relator identified essential expenditures of $910.00. This left a maximum of disposable income of $190.00 monthly. The relator would have needed $365.00 per month over the ensuing six months in disposable income to comply with the amount of increase awarded by the court. There was no evidence that the relator had readily available assets from which this new award could be paid.

A father may be required to provide his minor child with a college education, if his financial condition would not make such expenditures unreasonable. 24 Am. Jur. 2d *Divorce and Separation* §843, p. 956; 56 A.L.R.2d 1207. *W. Va. Code*, 48-2-15, as amended, plainly vests the court with jurisdiction to provide for the education of minor children. In matters of alimony, support of minor children, counsel fees and court costs, the trial court enjoys wide discretion and its judgment will not be disturbed unless it has abused its discretion. *Bond v. Bond*, 144 W. Va. 478, 109 S.E.2d 16 (1959); *Witt v. Witt*, 141 W. Va. 43, 87 S.E.2d 524 (1955).

While the trial court had authority to require the relator to provide for the education of his minor child, irre-

spective of any requirement in a property settlement agreement, in this instance its order requiring the relator to assume, in addition to monthly support payments, the entire financial burden of his daughter's college education amounts to an abuse of discretion. Considering the income of the relator and the needs of the minor child, we are of the opinion to award the writ and release the relator from custody. Requiring the relator to assume the full burden of financing a college education in addition to paying the original monthly support would on a calendar year basis almost double the former child support payments. The relator has demonstrated a faithfulness in meeting his obligation to support his daughter for almost six years and has expressed a willingness to provide for his daughter's education to the extent that he is financially able to do so. The remedy of imprisonment for failure to pay child support should not be enforced except where it appears that the defendant is contumacious. *State ex rel. Varner v. Janco,* W. Va., 191 S.E.2d 504 (1972). *See, Ex parte Beavers,* 80 W. Va. 34, 91 S.E. 1076 (1917).

In granting this relief, we do not pass upon the rights of the former wife, Mary Louise Trembly Cekala, to a proper additional allowance of child support to be made in consideration of all the circumstances of the case and of the parties.

*Prisoner discharged.*