330 S.E.2d 325

**Lena Y. SIMMONS**

v.

**Bert C. SIMMONS.**

**No. 16233.**

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 29, 1985.
Decided May 10, 1985.

**4**

Richard W. Cardot, Elkins, for appellant.

John F. Brown, Jr., Elkins, for appellee.

PER CURIAM:

We have granted the appellant, Lena Y. Simmons, a second appeal from a final judgment of the Circuit Court of Randolph County rendered in a divorce action. In the first appeal, we reversed the judgment below and remanded the case for a hearing to determine the ownership of personal and household property and money held in three joint bank accounts. *Simmons v. Simmons,* 171 W.Va. 170, 174, 298 S.E.2d 144, 147 (1982).

Although the appellant contends that the trial court erred in its ruling on the remand issues, she also forcefully argues that the lower court erred in failing to hold the appellee in contempt of court for his refusal to make alimony payments as ordered by the court. Believing this to be the most important issue in the case, we address this issue first.

Following remand, the appellant filed a motion seeking, among other things, a judgment for accrued alimony arrearages in the amount of $4,800, plus attorney's fees. She also moved the court to find the appellee in contempt of court for failure to abide by the divorce decree requiring him to pay $300 a month in alimony and for failure to pay prior judgments for accrued alimony and attorney's fees. The appellee did not appear in person at the initial hearing on January 19, 1983, and an order was entered directing him to appear at a hearing set for January 26, 1983. His attorney was present at the initial hearing, however, and the trial court based upon the appellant's testimony granted judgment for the alimony arrearages as prayed for plus $200 in attorney's fees. The appellant testified that the appellee since the 1979 divorce had made approximately three alimony payments. The trial court, over objection, refused to rule on the appellant's contempt motion.

At the January 26 hearing, both parties appeared and testified at length about the ownership of the personal property and the joint banking accounts. At subsequent hearings, evidence was introduced revealing that the appellee, who retired in 1973, receives monthly benefits from four sources totaling about $1,100 per month. These benefits come from the United Mine Workers Retirement Fund, the Social Security Administration, the Federal Black Lung Program, and the West Virginia Public Employees Retirement Fund. At this hearing, the trial judge again refused to consider holding the appellee in contempt of court, advising counsel that his only remedy was to collect on the judgments for accrued alimony as he would on any other money judgment.

The trial court committed clear legal error in refusing to consider whether the appellee should be held in contempt. Alimony payment obligations are tinged with a public interest and have traditionally been enforceable by contempt proceedings. *See, e.g., Bailey v. Bailey,* 127 W.Va. 826, 35 S.E.2d 81 (1945); *Smith v. Smith,* 81 W.Va. 761, 95 S.E. 199 (1918). As the Court held in Syllabus Point 4 of *Smith:*

"Though a decree for alimony ... may be enforced by execution, it is a decree not merely for the payment of money, but for the payment of money in discharge of the high marital duty of maintenance, wherefore it may be enforced by attachment for contempt also."

We expressly stated in note 14 of *Hendershot v. Hendershot,* 164 W.Va. 190, 203, 263 S.E.2d 90, 97 (1980), that our decision affording a jury trial in criminal contempt proceedings did not apply in civil contempt proceedings. As an obvious example of civil contempt, we noted that where a contumacious refusal to pay alimony had been established, incarceration without a jury trial was still proper if the sentencing order contained "the condition that the contemnor can gain immediate release by purging himself of the contempt by performing an act that is within his power to accomplish." 164 W.Va. at 203, 263 S.E.2d at 97. The contempt is civil rather than criminal, if "[a]s the courts sometimes say, he carries his own prison keys." *Ex Parte Beavers,* 80 W.Va. 34, 39, 91 S.E. 1076, 1078 (1917). *See* Syllabus Points 2 and 3, *State ex rel. Robinson v. Michael,* 166 W.Va. 660, 276 S.E.2d 812 (1981); *State ex rel. Canada v. Hatfield,* 163 W.Va. 548, 258 S.E.2d 440 (1979); *State ex rel. Trembly v. Whiston,* 159 W.Va. 298, 220 S.E.2d 690 (1975); Syllabus Point 9, *Eastern Assoc. Coal Co. v. Doe,* 159 W.Va. 200, 220 S.E.2d 672 (1975); *State ex rel. Varner v. Janco,* 156 W.Va. 139, 191 S.E.2d 504 (1972); Syllabus Point 7, *Smith v. Smith, supra;* 6A Michie's Jurisprudence *Divorce and Alimony* §§ 74, 75 (1985); 27B C.J.S. *Divorce* § 260(e)(2) (1959).

It is a matter of concern to this Court that the appellee with apparent means to do so has made approximately three alimony payments since the divorce. Considering the nature of the appellee's income, his longstanding failure to abide by the court's orders raises a strong inference of willful disobedience. Due to the nature of the appellee's income, exercise of the appellant's garnishment remedies may well be ineffective.[1] This Court recognized many years ago in *Smith,* 81 W.Va. at 767, 199 S.E. at 201, that resort to the traditional methods of enforcing a judgment can involve "ruinous delay and ... may be unavailing, and yet the delinquent party may have it in its power easily to raise and pay the money."

■ Consequently, on remand, the trial court shall hold a hearing pursuant to W.Va.Code, 48–2–22(b) (1984), within thirty days from and after the date of our decision to determine whether the appellee has contumaciously refused to make alimony payments. If the trial court finds after a hearing that the appellee has committed civil contempt, it should consider a conditional jail sentence, granting him a reasonable time to purge himself of contempt by making a substantial payment eliminating all alimony arrearages to the extent that it is within his power to do so. *See Bailey v. Bailey, supra.* The appellee should be prepared to make a complete disclosure of his financial condition at the hearing.

In connection with the contempt hearing, it should be observed that the great majority of jurisdictions have expressly held or recognized that in civil contempt proceedings based upon a failure to comply with a court order requiring the payment of alimony, the burden rests upon the alleged contemnor to prove his inability to pay. *See* 24 Am.Jur.2d *Divorce & Separation* § 807 (1983); Annot., 53 A.L.R.2d 591 (1957). *See generally* Syllabus Points 1 and 2, *Ex Parte Beavers, supra.*

■ We conclude the trial court did not err in ruling that the appellee was entitled to the money in the joint bank accounts. In the first appeal in this case, we reaffirmed the holding in *Dorsey v. Short,*

1. The appellee's state retirement is not subject to garnishment by virtue of W.Va.Code, 5–10–46. His Part B Black Lung benefits are likewise not subject to garnishment under 30 U.S.C. § 923, which incorporates by reference 42 U.S.C. § 407(a), which exempts social security disability benefits from execution. Even if his social security retirement benefits and United Mine Workers pension benefits can be reached, monetary limitations may be imposed by the Consumer Credit Protection Act, 15 U.S.C. § 1673(b).

157 W.Va. 866, 205 S.E.2d 687 (1974), our leading case on the ownership rights of living persons in joint bank accounts, and in Syllabus Point 3 of *Simmons* reiterated the following rule:

" 'Prior to the death of a donor depositor, a rebuttable presumption exists under the provisions of Code, 1931, 31A-4-33, as amended, that the ownership of the funds is joint, a presumption which may be overcome by competent evidence.' Syllabus Point 3, *Dorsey v. Short,* 157 W.Va. 866, 205 S.E.2d 687 (1974)."

We recognized in *Dorsey* that courts in resolving the often difficult questions concerning the ownership rights in multiple-party bank accounts have placed primary weight on "the intention of the donor depositor." 157 W.Va. at 872, 205 S.E.2d at 691.

The joint bank accounts in this case were in the names of the appellant, the appellee, and their adult adopted daughter. The evidence clearly supports the trial court's finding that the appellee contributed nearly all the monies in the accounts. The record also supports the trial court's finding that when the bank accounts were originally created, the appellee, who had just recently been forced to retire due to ill health, intended that the money deposited in these accounts would be expended only as required to meet the parties' living expenses and, if necessary, to cover future medical expenses. Upon his death, any remaining funds would then pass directly to the appellant and their daughter. No joint ownership was, in fact, ever intended. The appellee did not intend to create a present interest in the accounts such that, as against him, either his wife or daughter could withdraw all the monies in the accounts. He desired to create a right of survivorship without joint ownership. The fact that both the wife and daughter were named as payees certainly buttresses the trial court's finding that no joint ownership was originally intended.

Because the evidence convincingly demonstrates that the appellee did not intend upon opening the accounts to create joint ownership in the funds, we affirm the trial judge's ruling on this issue.[2] We reiterate here, however, that "withdrawal of the funds by the donor depositor does not conclusively rebut the presumption ... that no joint tenancy was originally created." *Simmons,* 171 W.Va. at 174, 298 S.E.2d at 147.[3]

The protracted litigation in this case over the ownership of the personal property acquired during the marriage must be brought to an end. The trial court made no findings of fact and simply ruled that the division of the property was satisfactory to the court. The appellant proposed detailed findings of fact in recognition of the requirements of Rule 52(a) of the West Virginia Rules of Civil Procedure.

We have made a review of the evidence and the appellant's proposed findings of fact and have reached the following conclusions. The appellant now has possession of a number of items and thus no dispute remains about those items. A number of items belong to the daughter or relatives of the parties and, consequently, no ownership ruling is proper as to those items in these proceedings. When the divorce was granted in 1979 the appellee believed that he had been awarded the personal property. Later when he moved from the rental housing that had been the marital home, he left some of the property behind and sold other items for about $200. Some household items deteriorated and were discarded.

---

**2.** Equitable distribution based on homemaker services is not available in this case, as the divorce complaint was filed prior to the our decision allowing homemaker services to form the basis for a division of marital assets. Syllabus Point 4, *LaRue v. LaRue,* 172 W.Va. 158, 304 S.E.2d 312, 321 (1983).

**3.** In Virginia, the General Assembly has recently enacted legislation in an effort to bring order and certainty to the area of multiple-party accounts and has enacted provisions specifically addressing the effects of divorce on the ownership of such accounts. A discussion of Virginia's new law and a review of prior statutory and case law is found in Note, 14 U.Rich.L.Rev. 851 (1980). *See also* Tinney, *Ownership of Bank Deposit Made in the Names of Two or More Persons,* 7 Proof Of Facts 2d 311 (1975).

Some of the items remaining in the appellee's possession are now of little economic value and are best forgotten. The evidence preponderates in the appellee's favor as to ownership of a refrigerator, a washer, a dryer, a Tappan range, a riding lawnmower, a garden tractor and a power mower. The trial court correctly ruled that the appellee owns the 1978-model automobile. The appellant prevailed as to an Electrolux sweeper, a set of china and several pieces of Fostoria. These items should immediately be given to the appellant.

■ As to the appellant's attorney's fees, we find no abuse of discretion as to the amount thus far awarded. On remand, a reasonable attorney's fee award should be given to the appellant's attorney for his services before the trial court and for his various appearances before this Court.

For the foregoing reasons, the judgment of the Circuit Court of Randolph County is affirmed, in part, reversed, in part, and the case is remanded for further proceedings consistent with this opinion.

Affirmed, in part; Reversed, in part; and Remanded.