346 S.E.2d 562

**STATE ex rel. Stephen W. BRITTON**

v.

**Margaret L. WORKMAN,**
**Judge, etc., et al.**

**No. 17110.**

Supreme Court of Appeals of
West Virginia.

July 11, 1986.

Michael R. Cline, Charleston, for relator.

Stephen B. Revercomb, Asst. Pros. Atty., John J. Cowan, Charleston, for respondents.

PER CURIAM:

The relator in this original habeas corpus proceeding, Stephen W. Britton, seeks relief from an order of the Circuit Court of Kanawha County remanding him to the custody of the Sheriff until he purges himself of contempt by making child support payments to his former spouse. The circuit court had previously found the relator to be in contempt for failure to make support payments and had ordered his incarceration on a work-release program. Upon a subsequent finding that the relator had violated the terms of his work release, the circuit court revoked the work release, remanded the relator to the county jail until such time as he purged himself of the contempt, and then conditionally reinstated the work release. The circuit court also ordered the jailer to monitor the relator's compliance and to report violations of the work-release program.

As his ground for habeas corpus relief, the relator contends that he has been incarcerated without due process of law in that he is indigent, unemployed, and without means to borrow money, and that the circuit court, with knowledge of the relator's indigency, improperly revoked the work release because of its dissatisfaction with the relator's earnings.

The named respondents are Margaret C. Workman, Judge of the Circuit Court of Kanawha County, and Danny Jones, Sheriff of Kanawha County. We have permitted the relator's former wife (Harriet Britton Hoy) to intervene in this proceeding.

I.

On June 4, 1980, a divorce was granted to relator's wife on the ground of irreconcilable differences. A separation agreement, incorporated into the divorce decree, provided for the relator to pay $300 per month for child support for the couple's two infant children.

Twice in 1981, the relator's ex-wife filed petitions alleging that the relator was in arrears in support payments and that he should be held in contempt. The circuit court issued orders requiring the relator to show cause why he should not be held in contempt. A hearing was held on September 24, 1981, following which the circuit court issued an injunction to prevent the relator from harassing, molesting, or intimidating his ex-wife. The injunction order also made certain modifications in relator's visitation rights, but did not mention child support payments.

The record next indicates that by order dated September 14, 1983, the injunction was continued in force, visitation periods were modified, and the child support obligations of the relator remained in effect. By separate order the circuit court entered judgment against the relator in the amount of $3,620.80 for unpaid child support, plus $400 for attorney's fees.

On January 7, 1985, on the petition of the relator's ex-wife averring that the relator was $5,400 in arrears, the circuit court ordered the relator to show cause why he should not be held in contempt for failure to pay child support. The circuit court subsequently referred the matter to a divorce commissioner who presided over a hearing and then issued findings of fact, summarized as follows: that since the September 14, 1983 order, the relator had made no further payments and child support arrearages had grown to $5,700; that the relator was in good health, had a high school education as well as two years of college, and had work experience in house construction and coal mining management; that since September, 1983, the relator had experienced business failures; that he had an annual income, derived from work for a family trust, of less than $1,000 in 1983, 1984, and thus far in 1985; that he was supported by his parents; that the relator hoped to begin earning $3,000 per month by starting a coal company; and that he was in contempt, but was not contumacious because he had tried to earn money. The commissioner recommended that the relator be given until April 1, 1985, to start paying $300 for child support and $700 per month toward the arrearage. In the event the relator would be unable to comply with the payment schedule, the commissioner recommended that he find employment, and further recommended to the circuit court that "coercive incarceration" might be necessary.

The relator's ex-wife objected to the commissioner's finding that relator was not contumacious. The relator took no exception to the commissioner's report.

On July 17, 1985, the relator petitioned for modification of his visitation periods. He alleged that his ex-wife interfered with his visitation rights. She cross-petitioned, alleging that the relator was $11,370.80 in arrears and that he also had not paid attorney's fee as previously ordered. She sought an order holding the relator in contempt.

On December 1, 1985, the circuit court found that the relator was in civil contempt because he had failed and refused to pay his child support obligations, was currently $12,241.51 in arrears, and had not made a meaningful effort to find work, although he possessed the appropriate skills, education, training, and physical ability. The circuit court ordered the relator to pay $300 per month plus $200 per month toward the arrears, beginning December 1, 1985. The circuit court further ordered that if the relator's ex-wife filed an affidavit stating that the relator was not making the payments, a capias would be issued and the relator would be incarcerated in the county jail on a work-release program until the payments were made.

On January 17, 1986, the relator's ex-wife filed an affidavit averring nonpayment of child support since the December 1, 1985 order. On January 24, 1986, the circuit court ordered that the relator be taken into custody, placed in a work-release program, and be incarcerated until he purged himself of contempt. The terms of the work release, set forth in a February 6, 1986 order, were as follows: the relator would be released from jail from 10:00 a.m. until 6:00 p.m., he was to travel directly to and from work, and he was to engage in no activity outside the jail other than work and visiting his children.

About two months later the jailer reported to the circuit court that he had traveled to the relator's workplace during working hours, but that the relator was not present. Accordingly, the circuit court held a hearing concerning the relator's compliance with the work-release plan. The evidence showed that the relator was released for approximately 327 hours and he actually worked for 91 hours. It was also shown that during some periods of time when the relator's employer had nothing for him to

do, the relator went to his parents' home rather than to the jail. It is undisputed that the relator had made only one $300 payment of child support since December, 1982.

## II.

The relator contends that he has no ability to purge himself and that the contempt is, therefore, criminal. He argues that incarceration was illegal because he was not given a jury trial. We disagree.

A jury trial is constitutionally required before incarceration can be ordered in a criminal contempt proceeding. *See Hendershot v. Hendershot*, 164 W.Va. 190, 263 S.E.2d 90 (1980). *See also* W.Va.Code, 48–2–22(a) (1984). However, the order in the instant case adjudging the relator guilty of contempt was issued for the purpose of enforcing former orders requiring the relator to make child support payments. In Syllabus Point 2 of *State ex rel. Robinson v. Michael*, 166 W.Va. 660, 276 S.E.2d 812 (1981), we stated:

"Where the purpose to be served by imposing a sanction for contempt is to compel compliance with a court order by the contemner so as to benefit the party bringing the contempt action by enforcing, protecting, or assuring the right of that party under the order, the contempt is civil."

Furthermore, the circuit court's order placing the relator in contempt provided that he would be released upon his willingness to pay the support. This is another hallmark of a civil contempt, as we stated in Syllabus Point 3 of *Robinson:*

"The appropriate sanction in a civil contempt case is an order that incarcerates a contemner for an indefinite term and that also specifies a reasonable manner in which the contempt may be purged, thereby securing the immediate release of the contemner, or an order requiring the payment of a fine in the nature of compensation or damages to the party aggrieved by the failure of the contemner to comply with the order."

*See also Gant v. Gant*, 174 W.Va. 740, 329 S.E.2d 106 (1985); *Floyd v. Watson*, 163 W.Va. 65, 254 S.E.2d 687 (1979).

The relator argues that he had no ability to pay support and, therefore, incarceration even under a civil contempt proceeding was improper. We note that W.Va.Code, 48–2–22(c) (1984), precludes incarceration of a defendant charged with contempt where the defendant is unable to pay. This subsection provides: "In the case of a charge of contempt based upon the failure of the defendant to pay alimony, child support or separate maintenance, if the court or jury finds that the defendant did not pay because he was financially unable to pay, the defendant may not be imprisoned on charges of contempt of court." This point has been confirmed in our case law.

In *Moore v. Hall*, 176 W.Va. 83, 85 n. 2, 341 S.E.2d 703, 705 n. 2 (1986), we restated the rule that imprisonment for failing to pay child support is improper where the parent obliged to make the payments is unable to pay:

"We have consistently stated that a person cannot be found in contempt of court for failure to make court-ordered payments, unless such person had the ability to pay and willfully refused to do so. As indicated in the Syllabus of *State ex rel. Canada v. Hatfield*, 163 W.Va. 548, 258 S.E.2d 440 (1979), 'The remedy of imprisonment for failure to pay child support should not be enforced except where it appears that the defendant is contumacious.' *See also State ex rel. Trembly v. Whiston*, 159 W.Va. 298, 220 S.E.2d 690 (1975); *State ex rel. Varner v. Janco*, 156 W.Va. 139, 191 S.E.2d 504 (1972); *Ex Parte Beavers*, 80 W.Va. 34, 91 S.E. 1076 (1917)."

We noted in *Simmons v. Simmons*, 175 W.Va. 3, 330 S.E.2d 325 (1985), that:

" [T]he great majority of jurisdictions have expressly held or recognized that in civil contempt proceedings based upon a failure to comply with a court order requiring the payment of alimony, the burden rests upon the alleged contemnor to prove his inability to pay. *See* 24 Am. Jur.2d *Divorce & Separation* § 807

(1983); Annot., 53 A.L.R.2d 591 (1957). *See generally* Syllabus Points 1 and 2, *Ex Parte Beavers, supra."* 175 W.Va. at 5, 330 S.E.2d at 327–28.

In *State ex rel. Trembly v. Whiston*, 159 W.Va. 298, 302, 220 S.E.2d 690, 694 (1975), we said: "Financial ability to pay, if supported by sufficient evidence, would relieve the relator from imprisonment on charges of contempt of court."

■ The factual issue whether the relator had the ability to make the child support payments is not properly before us because the relator has not provided us with a record of the hearing upon which the December 1, 1985 contempt ruling was based. Thus, we are unable to determine whether the circuit court's findings are supported by the evidence.[1]

As previously noted in paragraph three of the December 1, 1985 order, the circuit court stated the relator could purge himself of contempt by paying $500 per month, of which $300 would be for current support and $200 would be for the arrearage.[2] The March 21, 1986 order states that the relator can purge himself of contempt by making the payments as previously ordered.

■ The defect in these orders is that the method, whereby the relator can purge

himself of contempt, is in conflict with W.Va.Code, 48–2–22(b) (1984), which provides for incarceration, in a case of civil contempt, "for an indeterminate period not to exceed six months or until such time as the contemnor has purged himself whichever shall first occur." The order committing the relator to jail failed to limit the term of confinement to six months. If, as the order appears to contemplate, the relator will not free himself from jail until the judgment for child support arrearage is satisfied and if payments are made according to the court-ordered timetable, then the relator's period of confinement will exceed five years.

The relator is not entitled to discharge from confinement. However, the commitment order must be modified to reflect a maximum term that conforms with applicable law.

Writ granted as moulded.

---

1. The relator does not challenge the authority of the circuit court to impose a work-release program as a condition of confinement. We note, however, that Enrolled H.B. 2094, 1986 W.Va. Acts ch. ____, effective July 1, 1986, provides at § 48A–5–5(a)(2)(D)(ii), that a circuit court is authorized to: "Commit the contemnor to the county jail with the privilege of leaving the jail, during such hours as the court determines and under such supervision as the court considers necessary, for the purpose of allowing the contemnor to go to and return from his or her place of employment."

2. The language of paragraph three of the December 1, 1985 order is:

"That Stephen Britton may purge himself of civil contempt by paying to the cross-petitioner, Harriet Hoy, the monthly sum of Three Hundred Dollars ($300.00) plus Two Hundred Dollars on the payments in arrears, the said total monthly payment being Five Hundred Dollars commencing with a Three Hundred Dollar payment on December 1, 1985, and a Two Hundred Dollar Payment on December 15, 1985, and like twice-monthly payments being made in each month thereafter on the first and fifteenth of the month until the entire amount of said judgment and the legal interest thereon has been fully paid and satisfied."