376 S.E.2d 351

**STATE of West Virginia, Appellee,**

v.

**Rex LUSK, Appellant.**

**No. 18436.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

---

David C. Smith, Johnston, Holroyd & Gibson, Princeton, for appellant.

Charles G. Brown, III, Atty. Gen., for appellee.

MILLER, Justice:

The defendant, Rex Lusk, was convicted of criminal contempt in the Circuit Court of Mercer County in December, 1986, for failure to comply with a court order requiring him to make child support payments. He was sentenced to six months in the Mercer County jail, without an opportunity to purge the contempt and obtain release. He contends that the judge improperly interpreted W.Va.Code, 48–2–22(b), and should have given him an opportunity to purge himself of contempt. He also maintains he lacked the ability to pay and, therefore, could not have been convicted of criminal contempt. We disagree and affirm the circuit court.

I.

This case arose out of the divorce of the defendant and Catherine Lusk. The couple had a child, a daughter, custody of whom was awarded to Ms. Lusk. The defendant has custody of two sons from a prior marriage.

On February 25, 1985, after the couple had separated, the Circuit Court of Mercer County entered an order granting temporary child support relief. The defendant failed to comply with the temporary order and, on December 16, 1985, the circuit court held him in civil contempt. The court ordered the defendant to produce his 1984 federal and state income tax returns. In addition, the court ordered the defendant to pay Ms. Lusk's attorney's fees, to submit to a blood test to determine paternity, and to pay $75.00 per month in child support until the results of the paternity test were known. During the months of September and October, 1985, the defendant made six payments of $18.75.

The final divorce decree was entered February 10, 1986. It required the defendant to pay $50.00 per month child support when unemployed and $75.00 per month, or

15 percent of his net income, whichever was greater, during the periods he was employed.

At a hearing on April 16, 1986, the defendant's counsel informed the circuit court, as required under the final decree, that the defendant had received his 1984 and 1985 tax refunds. The court ordered the defendant to pay $300 on a loan to the People's Bank of Bluefield and to pay the balance of the refunds to Ms. Lusk. The defendant complied with this provision of the order, and was current in his payments through February, 1986.

From April 16, 1986, until October, 1986, the defendant paid Ms. Lusk only $25 in child support. On October 9, 1986, Ms. Lusk filed a petition requesting the circuit court to grant a judgment against the defendant for $600 in child support arrearages and to hold the defendant in contempt for failure to abide by the previous order. The circuit court transferred the case to criminal jurisdiction.

The defendant's criminal trial was held on December 15, 1986, before a jury in Mercer County. In the State's case-in-chief, it established that an order mandating child support had been entered, that the defendant was aware of the order, and that the defendant had failed to comply with its terms. The State also proved the defendant had earned approximately $8,000 and received unemployment compensation benefits in the amount of $882. In response, the defendant set forth two defenses: (1) that he failed to make the mandatory child support payments because he was financially unable to do so, and (2) that he did not contumaciously disobey the order. The defendant testified at trial that his net income for the year 1986 was $7,043.54, or approximately $560 per month. He documented $521.50 for monthly expenses, not including food and clothing. At the conclusion of the defendant's case-in-chief, both parties rested. After deliberating twenty-eight minutes, the jury returned a verdict of guilty. The trial court sentenced the defendant to a determinate term of six months in the Mercer County jail.

## II.

It appears that the trial court was following the provisions of W.Va.Code, 48–2–22 (1984), relating to contempt proceedings in divorce cases.[1] This statute contains rather detailed provisions regarding such a contempt proceeding, many of which are not relevant to the limited issues raised.

Initially, we note that there is no disagreement that this proceeding was a criminal contempt under W.Va.Code, 48–2–22(a), with a jury trial. The defendant assigns two principal errors. First, he argues that under W.Va.Code, 48–2–22(a), after the finding of contempt by the jury, the court should have granted him an opportunity to purge himself under subsection (b). A second error is claimed on the basis that under W.Va.Code, 48–2–22(c), he was finan-

---

1. The primary provisions are contained in subsections (a) and (b) of W.Va.Code, 48–2–22:

"(a) Upon a verified petition for contempt, notice of hearing and hearing, if the petition alleges criminal contempt or the court informs the parties that the matter will be treated and tried as a criminal contempt, the matter shall be tried before a jury, unless the party charged with contmpt shall knowingly and intelligently waive the right to a jury trial with the consent of the court and the other party. If the jury, or the court sitting without a jury, shall find the defendant in contempt for willfully failing to comply with an order of the court made pursuant to the provisions of this article, as charged in the petition, the court may find the person to be in criminal contempt and may commit such person to the county jail for a determinate period not to exceed six months.

"(b) If trial is had under the provisions of subsection (a) of this section and the court elects to treat a finding of criminal contempt as a civil contempt, or if the petition alleges civil contempt and the matter is not tried before a jury and the court finds the defendant in contempt for willfully failing to comply with an order of the court made pursuant to the provisions of this article, and if the court further finds the person has the ability to purge himself of contempt, the court shall afford the contemnor a reasonable time and method whereby he may purge himself of contempt. If the contemnor fails or refuses to purge himself of contempt, the court may confine the contemnor to the county jail for an indeterminate period not to exceed six months or until such time as the contemnor has purged himself, whichever shall first occur."

cially unable to pay and this was a defense to the contempt charge.[2]

### A.

The claim that W.Va.Code, 48–2–22(b), requires a defendant who is convicted of criminal contempt under W.Va.Code, 48–2–22(a), to be given an opportunity to purge himself. The defendant misreads subsection (b), which is basically designed to cover civil contempt trials. It does refer in one instance to criminal contempt trials by stating that if "the court elects to treat a finding of criminal contempt as a civil contempt," then it may accord the defendant a right to purge himself. The court, however, has to "further [find] the person has the ability to purge himself of contempt[.]" W.Va.Code, 48–2–22(b).

■ It is clear, however, that the option contained in W.Va.Code 48–2–22(b), for a court to convert a criminal contempt finding under W.Va.Code, 48–2–22(a), into a civil contempt is not mandatory.

### B.

■ The second issue is whether W.Va. Code 48–2–22(c), which provides that a defendant may not be jailed for contempt if he is found to be financially unable to pay, has been met. As a preliminary matter, we note that our longstanding rule in criminal contempt cases that the defendant's guilt must be proved beyond a reasonable doubt,

applies to criminal contempt trials under W.Va.Code, 48–2–22(a).[3]

■ Furthermore, we find that the legislature in enacting W.Va.Code, 48–2–22, did not intend to depart from our traditional law in this area which forecloses jailing a defendant who is in arrears in either alimony or child support payments unless his actions are deemed to be a willful or contumacious disobedience of the court order. A second requirement is that he have the financial ability to pay. *State ex rel. Canada v. Hatfield,* 163 W.Va. 548, 258 S.E.2d 440 (1979); *State ex rel. Trembly v. Whiston,* 159 W.Va. 298, 220 S.E.2d 690 (1975); *State ex rel. Varner v. Janco,* 156 W.Va. 139, 191 S.E.2d 504 (1972). This is borne out by the requirement in W.Va.Code, 48–2–22(a), that a defendant must be "in contempt for willfully failing to comply with an order the court[.]" This is followed by the statement in W.Va.Code, 48–2–22(c), that "if the court or jury finds that the defendant did not pay because he was financially unable to pay, the defendant may not be imprisoned on charges of contempt of court."

■ The defendant's argument is that the record shows as a matter of law that he had no financial ability to pay and, therefore, his motion for judgment of acquittal should have been granted. We disagree.

As earlier stated, the State presented evidence that the defendant earned approximately $8,000 in gross wages during the year of arrearages.[4] In addition, he was

---

2. W.Va.Code, 48–2–22(c), provides:

> In the case of a charge of contempt based upon the failure of the defendant to pay alimony, child support or separate maintenance, if the court or jury finds that the defendant did not pay because he was financially unable to pay, the defendant may not be imprisoned on charges of contempt of court."

3. In Syllabus Point 2 of *State ex rel. Cox v. Taft,* 143 W.Va. 106, 100 S.E.2d 161 (1957), we said:

> "A trial for criminal contempt is a quasi criminal proceeding, and the rules of evidence in criminal trials apply thereto. In such trial the guilt of the accused must be proved beyond reasonable doubt.' Point 2, Syllabus, *State ex rel. Continental Coal Company v. Van A. Bittner,* 102 W.Va. 677 [136 S.E. 202 (1926) ]."

Other courts have set the same standard of proof in criminal contempt proceedings. *See*

*Dawson v. Dawson,* 453 So.2d 1054 (Ala.Civ. App.1984); *Carter v. Brodrick,* 750 P.2d 843 (Alaska App.1988); *Bowen v. Bowen,* 471 So.2d 1274 (Fla.1985); *Wetzel v. Suchanek,* 373 Pa.Super. 458, 541 A.2d 761 (1988).

4. Although not an issue in this case, it appears the United States Supreme Court in *Hicks on Behalf of Feiock v. Feiock,* 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), has concluded that in a criminal contempt proceeding, the State bears the burden under the Due Process Clause of proving the defendant has the ability to pay. Thus, cases such as *State ex rel. Britton v. Workman,* 176 W.Va. 586, 346 S.E.2d 562 (1986) (per curiam), and *Simmons v. Simmons,* 175 W.Va. 3, 330 S.E.2d 325 (1985) (per curiam), which suggest the burden is on the defendant to prove financial inability to pay in a criminal contempt proceeding, are erroneous.

on unemployment security for several months and received $882. During this time, he paid only $25 to Mrs. Lusk. He also was able to obtain a $600 personal loan from a local bank. It is true that the defendant showed monthly payments for his car, his house trailer, utilities and other obligations totaling approximately $520, not including food.

We have not had occasion to consider in any detail what factors may be considered in determining whether the defendant has the financial ability to pay. Certainly, our cases suggest that the income and expenses of the defaulting spouse and the amount of payment required are key considerations in determining whether there is the ability to pay. *Simmons v. Simmons*, 175 W.Va. 3, 330 S.E.2d 325 (1985); *State ex rel. Varner v. Janco, supra.* Courts have also considered whether the defaulting spouse is without income because of a deliberate design to divest one's self of the ability to pay, in which event these assets will be considered. *Pascal v. Pascal*, 2 Conn.App. 472, 481 A.2d 68 (1984); *Wood v. Wood*, 239 Ga. 120, 236 S.E.2d 68 (1977); *Bulow v. Bulow*, 503 N.Y.S.2d 121, 121 A.D.2d 423 (1986); *Faught v. Faught*, 67 N.C.App. 37, 312 S.E.2d 504 (1984).

Much the same theory is used by courts where the defaulting spouse has assumed voluntary obligations in order to reduce potential income. *See Faught v. Faught, supra; Lynn v. Lynn*, 290 S.C. 359, 350 S.E.2d 403 (app.1986); *cf. Lambert v. Miller*, 178 W.Va. 224, 358 S.E.2d 785 (1987).

If we apply these considerations to the present case, we do not find that we can say as a matter of law that the defendant had no financial ability to pay. We ac-

knowledge that his income and expenses did not leave a great deal of surplus. On the other hand, the payment of $50 per month,[5] which became $75 per month when he was employed, was quite modest.

Moreover, there was some evidence that the defendant lost his best paying job as a truck driver because of excessive absenteeism which may have been deliberately designed. There was also some evidence that the car loan was a result of upgrading his car. We find that the court was correct in allowing the case to go to the jury, and we find its verdict supported under Syllabus Point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

"In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

For the foregoing reasons, the judgment of the Circuit Court of Mercer County is affirmed.

AFFIRMED.

---

5. It would appear that the $50 per month was ordered at the time the defendant had unemployment security income. While a court might order a person not employed and without any income to make monthly payments, the arrearages of such an obligation could not be utilized for a contempt while the person was still unemployed and without income.