In re Galo Eduardo
GRIJALVA, Debtor.

Beatriz (Grijalva) GUERRON, Galo A.
Grijalva, Lizeth C. Grijalva and
Ximena Grijalva, Appellees,

v.

Galo Eduardo GRIJALVA, Appellant.

Civ. A. No. 2:85–0959.

United States District Court,
S.D. West Virginia,
Charleston Division.

April 7, 1987.

Jack W. DeBolt, Charleston, W.Va., for appellees.

Ellen Maxwell Hoffman and Richard E. Rowe, Goodwin & Goodwin, Charleston, W.Va., for appellant.

Raymond G. Dodson, Charleston, W.Va., trustee.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

This matter is before the Court on appeal from a decision of the Bankruptcy Court. A record has been designated for review and counsel for the parties have submitted their briefs on the issues.

### I.

The Appellant, Galo Grijalva, is a physician. He is a native of Equador. The doctor came to this country in 1955 and became a citizen in 1961. He attended medical school in Mexico and graduated in 1975. He completed his residency in pediatrics in 1979 and practiced in that field in Charleston from 1979 to 1985. Dr. Grijalva is now practicing in Florida. The Appellee, Beatriz Guerron, is the doctor's ex-wife. She, too, is a native of Equador. Mrs. Guerron married Dr. Grijalva in July of 1964. Although she has resided for several years in the United States, she does not speak English well. Her language problem was manifested at the adversary proceeding below by the need for her daughter to help her with some of the questions. Perhaps because of her difficulty with the English language, Mrs. Guerron has had no meaningful work experience outside of her home while in the United States. She was unemployed at the time of this appeal and has no income apart from that received from Dr. Grijalva.

Dr. Grijalva and Mrs. Guerron were divorced in September of 1981. Mrs. Guerron received custody of the couple's three children: Galo, Lizeth and Ximena. To provide support for Mrs. Guerron and the three children—the children were all minors at the time—and to divide their marital property, the parties executed a separation agreement which was incorporated into the divorce decree. After a "flurry of litigation" over the terms and conditions of the separation agreement, the parties executed a "Substituted Separation Agreement" on February 24, 1984, which superseded the original agreement. The Substituted Separation Agreement contained several terms. The agreement provided for alimony payments to Mrs. Guerron of $1,500.00 per month and child support payments of $400.00 per month. The doctor was also obligated to pay the expense of the children's college education. That expense, although somewhat open-ended, was limited to that normally associated with four years of undergraduate study by a state resident at a state university. Dr. Grijalva conveyed his interest in the marital residence to Mrs. Guerron and agreed to make the monthly mortgage payments of $420.00. The doctor further agreed to maintain a life insurance policy on his life in the amount of $300,000 with his children and ex-wife listed as irrevocable beneficiaries. Finally, the doctor agreed to pay some attorney fees incurred by Mrs. Guerron incident to the divorce. Although the agreement contained other terms, those are the highlights relevant to the discussion here.

Finding his many debts to be "overwhelming", Dr. Grijalva filed a Chapter 7 bankruptcy petition. In response, Mrs. Guerron, together with the three children, filed objections. She sought to have certain of the doctor's obligations declared nondischargable under the provisions of 11 U.S.C. § 523(a)(5). After an adversary hearing, the Bankruptcy Court ruled that the greater part of the Substituted Separation Agreement represented obligations

which the doctor could not discharge in bankruptcy. Dr. Grijalva does not contest the nondischargability of the alimony and child support payments, but as to four specific obligations he contends that the Bankruptcy Court erred. He argues that the mortgage payments, the educational expenses, the attorney fees, and the life insurance requirement should all be discharged. Thus, he appeals.

## II.

The dispute in this case revolves around the central question of whether Dr. Grijalva's obligations to the four Appellees are in the nature of alimony and support payments or are a division of property and debts. The importance of the distinction is found in the controlling provision of the Bankruptcy Code: 11 U.S.C. § 523(a)(5). That section provides that an obligation incurred by the debtor in connection with a divorce decree or property settlement agreement is dischargable unless such liability is actually in the nature of alimony, maintenance or support.* It is well settled that federal bankruptcy law, not state law, determines whether a debt constitutes alimony, maintenance or support. *In re Seidel*, 48 B.R. 371 (Bankr.C.D.Ill.1984); *Matter of Stranathan*, 15 B.R. 223 (Bankr.D.Neb.1981); *In re Trichon*, 11 B.R. 658 (Bankr.S.D.N.Y.1981).

The Appellees have listed in their brief twelve factors which the courts have from time to time applied in assessing the obligations of a debtor spouse. Although not all are relevant to the instant dispute, they are set forth below:

1. Whether the payments are to be made directly to the spouse.

2. The relative earnings of the parties.

3. Evidence that the spouse relinquished rights and property in return for the payment of the obligations.

4. The efforts of a spouse toward the successful completion of the other's professional education.

5. The length of the parties' marriage and the number of dependent children.

6. The document itself and any inferences which can be drawn from placement of specific provisions within the document.

7. The language of the divorce decree.

8. The treatment under prevailing state law.

9. Whether the debt was incurred for the immediate living expenses of the spouse.

10. Whether the payments were intended for the economic safety of the dependant(s).

11. Whether the obligation is enforceable by contempt.

12. Whether the payments are payable in installments over a substantial period of time.

Appellant's brief at 5. This then is the Court's task: To determine whether the Bankruptcy Court erred in finding the obligations of Dr. Grijalva to be nondischargable.

As a further matter, the Court notes that the standard of review on this appeal counsels deference to the Bankruptcy Court. The findings of that court will not be set aside unless they are clearly erroneous. Bankruptcy Rule 8013. *See also Boyle v. Donovan*, 724 F.2d 681, 683 (8th Cir.1984); *In re Coil*, 680 F.2d 1170, 1172 (7th Cir. 1982). With this standard in mind, the Court now turns to each of the points preserved by Dr. Girjalva.

---

* "(a) A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
  (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or
(B) such debt includes a liability designated as alimony, maintenance or support, unless such liability is actually in the nature of alimony, maintenance, or support."
11 U.S.C. § 523(a)(5).

## A. *Mortgage payments.*

■ The Bankruptcy Court found the doctor's obligation to make mortgage payments on the former marital residence to be in the nature of alimony and child support and, therefore, nondischargable. The Bankruptcy Court opined that amount of the mortgage payments, when added to the other alimony and child support payments, was reasonable in light of the size of the former family. The Court respectfully disagrees.

The mortgage payments required to be made by Dr. Grijalva are not referenced under either of the sections covering alimony or child support. The obligation is contained in the separation agreement's section titled "Parties' Residence." The separation agreement itself opens with a request to the state court that it declare the Substituted Separation Agreement "to be fair and equitable and that the same be ratified, approved and confirmed as a *settlement of the property rights* as set forth in such Substituted Separation Agreement." (Emphasis added). The agreement does close with the comment that "[a]ll payments to Beatriz under this agreement shall be considered as contractual alimony as provided in this agreement...." It must be remembered, however, that the mortgage payments in issue would be made to a third party, not to Mrs. Guerron. Moreover, the closing language reinforces the conclusion that "alimony" under the terms of the agreement means payments to Mrs. Guerron. The section containing the referenced alimony is labeled "Payments to Wife."

The Appellees argue that the cessation of the obligation to make mortgage payments upon the death or remarriage of Mrs. Guerron indicates that the payments are in the nature of alimony, support or maintenance. Counterbalancing that feature, however, is Dr. Grijalva's obligation to pay the remainder of the mortgage principal even in the event that Mrs. Guerron sells the house before the mortgage is liquidated. This obligation, included as it is in the same paragraph as Dr. Grijalva's commitment to convey the marital residence, evidences a property division rather than an arrangement for support.

The intent of the parties can be further gleaned from the amount of the alimony and child support payments as designated. Those two amounts when added together equal $1,900.00. And that sum does not include the health and dental insurance coverage which the doctor was obligated to provide. The size of that payment militates against a conclusion that the mortgage payments were intended to be in the nature of alimony, maintenance or support. Rather, the totality of the circumstances convinces the Court that the payments bear more of the characteristics of a property settlement.

## B. *Life Insurance.*

■ The Bankruptcy Court held that the obligation of Dr. Grijalva to keep a life insurance policy in effect on his life was nondischargable. Specifically, the court found the life insurance policy to be "the safety-net of the child support and alimony." [R. 53]. The Bankruptcy Court concluded that it was "a foundation that should be kept in place to protect the family." *Id.* The doctor retorts that the policy is an unwarranted expense which does not provide *immediate* support and maintenance for the family. The Court disagrees.

The basis for the Bankruptcy Court's decision was its perceptive realization of the Appellees' plight. At the time of the adversary proceeding they were completely dependent upon the doctor for support. The evidence shows three children not yet ready to make a significant contribution to the family welfare and a mother (Mrs. Guerron) unable to do so because of difficulty with the English language. If anything were to happen to Dr. Grijalva, the family would be left destitute, dependent upon public assistance for survival. Based upon these peculiar facts, the Bankruptcy Court found the life insurance policy to be in the nature of alimony, support and maintenance. The Court does not believe that finding to be clearly erroneous.

## C. *College Education Expense.*

In the Substituted Separation Agreement, Dr. Grijalva agreed to pay, within certain guidelines, for the education and living expenses of his children past the age of 18 who attend college or vocational school. The Bankruptcy Court found this obligation to be nondischargable. In addressing the doctor, the Court remarked that "even though there is no law in West Virginia which would make one responsible for the education expenses of the children, it is an obligation that you agreed to in the modified settlement agreement and which you called, by the language of that agreement, a contract to provide alimony and child support." [R. 53].

The doctor argues that the obligation to pay the educational expenses of his non-minor children is contractual in nature, not statutory. The doctor is correct—as was the Bankruptcy Court in its observation—that there is no West Virginia law placing such an obligation upon a parent. In *State ex rel. Trembly v. Whiston,* 159 W.Va. 298, 220 S.E.2d 690 (1975), the West Virginia Court did state that "[a] father may be required to provide his minor child with a college education, if his financial condition would not make such expenditures unreasonable." *Id.* at 694. The doctor points out, however, that at the time of that decision the age of majority was 21. It is now 18. Therefore, the doctor argues, once a child reaches the latter age, the parents' obligation for support ceases.

■ The Court rejects the doctor's arguments. The flaw in his reasoning is that he looks to state law for his authority. As previously stated, federal bankruptcy law, not state law, controls the question. The Eleventh Circuit applied this principle in *Harrell v. Sharp,* 754 F.2d 902 (11th Cir. 1985), in finding the post-majority educational expenses of the debtor's children to be nondischargable:

"We are of like opinion in the present case, that the nature of debtor's promise to pay educational expenses and child support is not determined by the legal age of majority under state law. The Bankruptcy Court characterized the agreement to pay educational expenses as in the nature of support, and the only ground on which debtor has challenged that characterization on appeal relates to the state law legal duty as determined by the age of majority. We are persuaded by the language of § 523(a)(5), the legislative history of that section, and the weight of the case law that the absence of a state law duty does not determine that an obligation is dischargable in bankruptcy. Accordingly, we affirm the district court's decision with respect to the nondischargability of debtor's obligation to pay post-majority child support and educational expenses."

*Id.* at 905.

This Court agrees with the Eleventh Circuit's thinking. The Bankruptcy Court found the debtor doctor's obligation to pay for the educational expenses of his college-aged children to be nondischargable. Again, the Court does not believe this finding of fact to be clearly erroneous.

## D. *Attorney Fees.*

■ Finally, there is the issue of attorney fees. Mrs. Guerron incurred legal fees incident to the divorce. Mr. Thaxton was her attorney. The original separation agreement of August 27, 1981, dictated that Dr. Grijalva would pay Mrs. Guerron's legal fees attendant to her divorce action. The substitute agreement of February 24, 1984, left this obligation in place. The Bankruptcy Court found that the obligation to pay the attorney fees was nondischargable. The Court did not, however, determine the reasonableness of those fees. It left that determination for later proceedings.

The doctor has cited cases for the proposition that an award of attorney fees is a division of property rather than an award in the nature of alimony, maintenance or support. *In re Norman,* 13 B.R. 894 (Bankr.W.D.Mo.1981); *In re Allen,* 4 B.R. 617 (Bankr.E.D.Tenn.1980). Alternatively, the doctor argues that since the payment is to a third party, the obligation is dischargable. *In re Lang,* 11 B.R. 428 (Bankr.W.D.

N.Y.1981); *In re Trichon,* 11 B.R. 658 (Bankr.S.D.N.Y.1981).

The doctor admits, however, that an award of attorney fees has been found nondischargable where the spouse is in dire financial need and unable to support both herself and pay her attorney. *In re Rank,* 12 B.R. 418 (Bankr.D.Kan.1981). There was certainly evidence before the Bankruptcy Court here that it would be a financial hardship for Mrs. Guerron to pay her attorney. [R. 16].

From a review of the record, including the separation agreements and the transcript of the proceedings below, the Court concludes that the Bankruptcy Court did not err in deciding that the attorney fees obligation was not a property settlement. The words of one bankruptcy court aptly summarize the controlling rule:

> "The majority rule is that, except when it appears clearly that the award was a property settlement, attorney fees awarded to an ex-spouse in a divorce decree are so closely connected with an award for support as to be in the nature of support or alimony and, therefore, are nondischargable."

*Stanzione and Stanzione P.A. v. Shenewolf,* 27 B.R. 187, 188 (Bankr.M.D.Pa.1982) (*quoting Glover v. Glover,* 16 B.R. 213, 215 (Bankr.M.D.Fla.1981)).

### III.

In accordance with the foregoing discussion, the Court affirms the Bankruptcy Court in part and reverses it in part. The Court reverses the Bankruptcy Court's decision as to the dischargability of the obligation to make mortgage payments. Otherwise, the decision of the Bankruptcy Court is affirmed. An appropriate order shall issue.