**In re James Vasco HILL, Debra Lee Hill, Debtors.**

**James Vasco HILL, Plaintiff,**

v.

**Shirley HALE, Charles E. Enslen and the Honorable E. Duane Daugherty, Defendants.**

**Bankruptcy No. 88–60075.
Adv. No. 89–6074.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division at Gary.

June 5, 1989.

David A. Kerr, Valparaiso, Ind., for plaintiff.

Kermit R. Hilles, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT[1]

KENT LINDQUIST, Chief Judge.

### I.

*Statement of Proceedings*

This adversary proceeding came on for bench trial on May 30, 1989 pursuant to Order of Court on May 19, 1989, on the Complaint filed by Debtor, James Vasco Hill (hereinafter: "Debtor") on May 2, 1989. By virtue of the Court's Memorandum Opinion and Order dated May 10, 1989 issued pursuant to Telephonic Pre–Trial Conference held on May 3, 1989, the Court held that the Plaintiff's Complaint is deemed to be filed pursuant to 11 U.S.C. § 523(a)(5), Bankr.R. 7001(6) and Bankr. 4007(b) to determine the nondischargeability of any debt arising out of a Dissolution Decree entered by the Jasper Circuit Court relating to the Debtor and the Defendant, Shirley Hale ("ex-wife").

Debtor appears by Attorneys David Kerr and Nancy Harris Vardit.

Ex-wife appears by Attorney Charles Enslen.

By oral order in open Court, the Court ordered that any and all issues relating to the dischargeability of any marital debt arising out of the Dissolution Decree between the Debtor and the ex-wife be severed from any claim or issues to be tried relating to contempt, or emergency relief as to the ex-wife, and the Co–Defendants, The Honorable E. Duane Daugherty and Charles E. Enslen, and that the dischargeability issues only be tried first.

### II.

*Findings of Fact*

The parties stipulated into the evidence Debtor's Exhibits "C" and "D".

Plaintiff's Exhibit "C" is an "Order" dated November 3, 1982 dissolving the marriage between the Debtor and the ex-wife (hereinafter: "Decree").

Plaintiff's Exhibit "D" is a "Stipulated Property Settlement ('Agreement')" dated January 31, 1983, which was approved by the State Court and incorporated as part of the Decree.

The only provision of the Decree which is in dispute is clause two of the Agreement which provides as follows:

2. JAMES HILL will assume, agree to pay and hold SHIRLEY HILL harmless therefrom, the mortgage payments, which include taxes and insurance, on the Lake Station residence until the entire balance of approximately Eight Thousand Dollars ($8,000.00) is paid in full. In the event JAMES HILL elects to prepay the balance due on said mortgage, any monies in the escrow account shall be transferred to SHIRLEY HILL.

Pursuant to Clause 1 of the Agreement, the ex-wife was granted the fee-simple title to their marital residence. The mortgage referred to in Clause 2 of the Agreement is on the marital residence.

The only witness for the Debtor was the ex-wife. She testified as follows:

1. That she still lives in the former marital property and has lived there for 23 years.

2. That at the time of the entry of the Order and Agreement, the parties had six children, only one of which was a minor, which was residing with the Debtor.

3. That she was not aware that on October 27, 1982 her Dissolution Attorney

---

**1.** This Judgment constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52 as made applicable by Bankr.R. 7052.

had filed a Notice of Intent to Present Evidence of Disability (*See*, Debtor–Plaintiff's Exhibit "A", Jasper Circuit Court Docket Sheet, Cause No. C–101–82, 10/27/82 entry).

4. That her Dissolution Attorney had explained the terms of the Agreement to her but she did not know what part thereof, if any, constituted spousal support, maintenance, or a property settlement.

5. That in December of 1978, she was admitted to Porter Memorial Hospital for a heart problem, and eventually in May of 1979 underwent open-heart surgery at Northwest Memorial.

6. That for one year after the surgery, she could not perform normal household tasks, such as cleaning house or cooking.

7. That between the time of the surgery and the entry of the Decree and Agreement, there was little change in her physical condition, and while she was able to resume her household chores, she was not capable of being gainfully employed.

8. That her understanding as to why the Debtor was to pay the mortgage was that she could not work, and in this way she could "keep a roof over her head".

9. She opined that the value of the marital home was $56,000.00 and that the only lien thereon was the $8,000.00 mortgage in question; that the Debtor paid the down payment on the purchase thereof and all the monthly mortgage payments.

10. That the parties had been married 26 years; that she was 18 when they married; that she had not been employed prior to the marriage, and other than for two years when she assisted the Debtor in his business, she was a housewife.

11. That she has no social security benefits, disability insurance or medical insurance.

12. That the $10,000.00 (Clause 3 of Agreement) and the $36,000.00 (Clause 4 of Agreement) awarded to ex-wife was to compensate her for her share of the Debtor's business, which he retained.

13. That she remarried in February of 1983.

The ex-wife's sole witness was her Dissolution counsel, David Capp ("Capp") who testified as follows:

1. That the main concern of Capp in negotiating the Agreement was to provide a place for the ex-wife to live and to have the Debtor pay the mortgage.

2. That the Notice of Intent to Present Evidence of Disability filed October 27, 1982 was probably withdrawn on November 3, 1982 (*See*, Plaintiff's Exhibit A, 11/3/82 entry), based on the fact that a satisfactory settlement had been negotiated as set out in the Agreement approved by the Court.

3. That although he could not recall specifically negotiating with Debtor's Dissolution counsel as to spousal maintenance or support in drafting the Agreement, he does recall that the ex-wife's health and inability to support herself was discussed.

4. That maintenance was not specifically spelled out in the Agreement in that the parties' settlement as evidenced by the Agreement "settled everything in one package" without reference to labels.

### III.

#### Conclusions of Law

No objections were made by the parties to the jurisdiction of this Court and the Court finds this is a core proceeding pursuant to 28 U.S.C. § 157.

At the outset the Court would note some basic legal principles that apply to adversary proceedings instituted by a creditor to have a debt determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

In keeping with the purpose of the Bankruptcy Code, exceptions to the general rule of dischargeability of debts are to be strictly construed in favor of the Debtor. *In re Linn*, 38 B.R. 762 (9th Cir. BAP 1984); *In re Marino*, 29 B.R. 797 (D.C.N.D.Ind.1983). The exceptions to dischargeability must be narrowly construed against the creditor's objections, and confined to those plainly expressed in the Code. *In re Norman*, 25 B.R. 545 (Bankr.

S.D.Cal.1982). This is done to effectuate the fresh start policies of the Bankruptcy Code. *In re Levitan*, 46 B.R. 380 (Bankr. E.D.N.Y.1985); *In re Nicoll*, 42 B.R. 87 (Bankr.N.D.Ill.E.D.1984).

■ Although, the nondischargeability provision of the Bankruptcy Code has no provisions allocating the burden of proof as to adversary proceedings brought under it, the creditor must establish that the debt is nondischargeable and has the burden on each element. *In re Kreps*, 700 F.2d 372, 376 (7th Cir.1983); *In re Bowers*, 43 B.R. 333 (Bankr.E.D.Pa.1984); *Matter of Reinstein*, 32 B.R. 885 (Bankr.E.D.N.Y.1983); *In re Paley*, 8 B.R. 466 (Bankr. E.D.N.Y.1981). The creditor objecting to discharge of a debt in bankruptcy bears a heavy burden of proof to establish that the debt is squarely within the statutory exceptions. *In re Marino*, 29 B.R. 797 at 799, *supra.*

11 U.S.C. § 523(a)(5) provides as follows:
(a) a Discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—....

 * * * * * *

(5) *to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child,* in connection with a separation agreement, divorce decree, or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, *but not to the extent that—*

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; .... (emphasis added)

The legislative history of this particular section in the form of Legislative Statements indicates as follows:

Section 523(a)(5) is a compromise between the House bill and the Senate amendment. The provision excepts from discharge a debt owed to a spouse, former spouse or child of the debtor, in connection with a separation agreement, divorce decree, or property settlement agreement, for alimony to, maintenance for, or support of such spouse or child but not to the extent that the debt is assigned to another entity. If the debtor has assumed an obligation of the debtor's spouse to a third party in connection with a separation agreement, property settlement agreement, or divorce proceeding, such debt is dischargeable to the extent that payment of the debt by the debtor is not actually in the nature of alimony, maintenance, or support of debtor's spouse, former spouse, or child. (124 Cong Rec H11096 (daily ed. Sept. 28, 1978); S17412 (daily ed. Oct. 6, 1978)).

*Reprinted in* Norton Bankruptcy Law and Practice, Bankruptcy Code § 523, *Legislative History and Comment.*

The Notes of the Committee on the Judiciary, House Report No. 95–595 state as follows:

Paragraph (5) excepts from discharge debts to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of, the spouse or child. This language, in combination with the repeal of section 456(b) of the Social Security Act (43 U.S.C. 656(b) [former section 656(b) of Title 42, The Public Health and Welfare] by section 327 of the bill, will apply to make nondischargeable only alimony, maintenance, or support owed directly to a spouse or dependent. See, Hearings, pt 2, at 942. *What constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law.* Thus, cases such as *In re Waller*, 494 F.2d 447 (6th Cir 1974); Hearings, pt 3, at 1308–10, are overruled, and the result in cases such as *Fife v. Fife*, 1 Utah 2d 281, 265 P.2d 642 (1952) is followed. This provi-

sion will, however, make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse as determined under bankruptcy law considerations that are similar to a consideration of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement. See Hearings, pt 3, at 1287–1290. (H R Rep No. 95–595, 95th Cong, 1st Sess 364 (1977))

*Reprinted* in Norton Bankruptcy Law and Practice, Bankruptcy Code § 523, *Legislative History and Comment.* (emphasis added.)

Norton Bankruptcy Law and Practice § 27.56 (Callahan & Co.1983), provides an informative discussion of the area of the dischargeability of family support, and thus to put the matter in proper perspective, the Court will take the liberty of quoting from this treatise at length. Norton states as follows:

> Throughout the history of United States bankruptcy law, family support organizations have been excepted from discharge. Prior to statutory enactment, nondischargeability was based on the theory that the obligation to support a spouse or child was not a debt and that only debts could be discharged. Thus the first statutory exception to discharge for family support obligations was "merely declaratory" of existing law.[1]

> The current exception of spousal and child support is found in Code § 523(a)(5). The duty to support a present or former spouse or child is the principal interest protected by the section.[2] Whether a duty of support exists depends on state law;[3] whether an obligation based on that duty is nondischargeable depends on federal law.[4]

> If both the duty to support and the relationship between that duty and the debt whose dischargeability is questioned are clear, few problems are presented. In practice, however, it is difficult to establish the relationship between the duty and the debt, because a debtor-creditor relationship can exist between spouses (or former spouses) for reasons other than support, and it is often uncertain whether the debt has a nondischargeable support base or some other dischargeable base.

> The courts have taken different approaches in determining whether the obligation is based on the duty to support or not. The major federal court approach,[5] espoused by Judge Learned Hand, confines the inquiry to whether the obligation arose out of discharges, or in any way expresses, the duty of support. If that question is answered affirmatively, the form of obligation is disregarded and the obligation is excepted from discharge. The second approach,[6] followed by the majority of state courts, focuses on the form of the obligation, as well as on the intent of the parties or of the matrimonial court; occasionally courts following this approach also consider the dependent spouse's need for or use of the payment.

---

[1] *Westmore [Wetmore] v. Markoe,* 196 US 68, 49 L.Ed. 390, 25 S.Ct. 172 (1904).

[2] Louiseaux, *Domestic Obligations in Bankruptcy,* 37 Journal Nat Assoc. Ref In Bank 68 at N 16 (July 1963).

The term "support" includes the somewhat archaic distinctions between alimony owed to a former spouse, maintenance owed to a former spouse, maintenance owed to a legally separate spouse, and support owed to a spouse or child.

[3] Without a state-imposed duty to support another, any obligation purporting to be based on it is dischargeable. *See* § 27.57. Neither federal statute nor federal common law creates a duty to support another.

[4] Application of federal dischargeability standards is illustrated by cases based on Texas law which expressly forbids alimony or support awards to a divorced spouse. A duty that is sufficiently like the support duty has been found for federal dischargeability purposes. See § 27.58. *In re Warner,* 6 BCD 788, 5 BR 434 (BC D Utah, 1980).

5. See § 27.59. [*Citing, In re Adams,* 25 F.2d 640 (2d Cir.1928), where Judge Hand propounded the rule that the underlying duty and not the terms of the obligation controls dischargeability].

6. See § 27.60.

■ The Federal Courts have consistently held that in the context of a bankruptcy discharge, whether an obligation is in the nature of alimony, maintenance or support is a matter to be determined by federal bankruptcy law and not state law. *In re Harrell,* 754 F.2d 902 (11th Cir.1985); *In re Williams,* 703 F.2d 1055 (8th Cir.1983); *Shaver v. Shaver,* 736 F.2d 1314, 1316 (9th Cir.1984) (Held: although Indiana does not provide for alimony, the Bankruptcy Court was not bound by the treatment of the obligation in Indiana Courts); *In re Calhoun,* 715 F.2d 1103, 1107 (6th Cir.1983); *Erspan v. Badgett,* 647 F.2d 550, 554–55 (5th Cir.1981); *In re Mencer,* 50 B.R. 80, 83 (Bankr.E.D.Ariz.1985); *In re Seidel,* 48 B.R. 371, 373 (Bankr.C.D.Ill.1983).

The Court in *In re Harrell* correctly held as follows:

> Debtor contends that his obligation to pay post-majority educational expenses and child support is dischargeable because he was not required under relevant state law to support his son past the age of majority. We do not accept this argument. For several reasons we reject debtor's premise, that an obligation is "actually in the nature of support" only if it could have been imposed under the relevant state law legal duty of support.
>
> First, the language of § 523(a)(5) does not refer to a particular state law legal duty of support. If Congress had intended dischargeability to be determined by whether an obligation could be imposed under state law, it might have addressed dischargeability in those terms. Congress chose instead to describe as not dischargeable those obligations in the "nature" of support. We believe that in using this general and abstract word, Congress did not intend bankruptcy courts to be bound by particular state law rules.

This conclusion is directly supported by the legislative history of § 523(a)(5). The committee reports that accompanied the new bankruptcy code provide that "what constitutes alimony, maintenance, or support will be determined under the bankruptcy laws, not state law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6319. We take this legislative history as another indication Congress did not intend dischargeability to be determined by reference to a state law legal duty of support.

Most circuit courts of appeal that have considered the question have likewise concluded that state law does not determine whether a domestic obligation is dischargeable in bankruptcy. In *Shaver v. Shaver,* 736 F.2d 1314 (9th Cir.1984), for example, the court considered the effect on dischargeability of a provision under Indiana law that allowed alimony only when a spouse was incapacitated or when the parties agreed in writing to an award of alimony. *Id.* at 1316 & n. 4. The court did not follow the state law but looked instead to the substance of the obligation in question to determine if it was one for support. *Id.* at 1316. The court concluded that the parties intended to provide support "and therefore ... the obligation was 'in the nature of alimony, maintenance, or support' under federal law." *Id.* at 1317. Having determined that the obligation was in the nature of support under federal law, the court held that it was not dischargeable in bankruptcy. *Id.*

Similarly, in *Williams v. Williams (In re Williams),* 703 F.2d 1055 (8th Cir. 1983), the court observed that it was "not bound by the characterization of an award under state law." *Id.* at 1057. The court in *Williams* affirmed that a debtor's agreement to pay his wife's attorney's fees was "in the nature of support," even though under applicable state rules, the agreement would not be considered support. *Id.* at 1057. The court observed that "whether a particular debt is a support obligation or part of a property settlement is a question of federal

bankruptcy law, not state law." *Id.* at 1056.

The case we have considered that is most similar to the present case is *Boyle v. Donovan*, 724 F.2d 681 (8th Cir.1984), which the court considered a debtor's obligation to pay educational expenses. The court rejected debtor's argument that since he had no legal duty under state law to pay the expenses, his obligation was dischargeable. *Id.* at 683. The court found that the parties had intended their agreement to function as support, and that this conclusion was not altered by the fact that state law did not require the undertaking. *Id.* We are of like opinion in the present case, that the nature of debtor's promise to pay educational expenses and child support is not determined by the legal age of majority under state law. The bankruptcy court characterized the agreement to pay educational expenses as in the nature of support, and the only ground on which debtor has challenged that characterization on appeal relates to the state law legal duty as determined by the age of majority. We are persuaded by the language of § 523(a)(5), the legislative history of that section, and the weight of the case law that the absence of a state law duty does not determine that an obligation is dischargeable in bankruptcy. Accordingly, we affirm the district court's decision with respect to the nondischargeability of debtor's obligation to pay post-majority child support and educational expenses.

*Id.* at 904–905 (footnotes omitted).

*See, also, In re Yeates,* 807 F.2d 874 (10th Cir.1986), where the Court held that a debtor's obligation to a former spouse may be in the nature of support so as to be not dischargeable even though it would not qualify as alimony or support under applicable state law.

State law, however, should be looked to by the bankruptcy court as a criteria in indicating whether a given award is in the nature of or characterized as a property settlement and dischargeable or an award of support, alimony or maintenance and

thus nondischargeable. *In re Yeates, supra; In re Seablom,* 45 B.R. 445 (Bankr. D.N.D.1984); *In re Kagan,* 42 B.R. 563 (Bankr.N.D.Ill.1984). Thus, the bankruptcy court need not ignore well developed state law principles of domestic relations in determining whether a particular obligation is in the nature of support. *In re Holland,* 48 B.R. 874 (Bankr.N.D.Tex.1984); *In re Vogt,* 14 B.R. 743 (Bankr.E.D.Va.1981). This is particularly true in light of the fact that there is no federal law of alimony and support, and all domestic relations law is of state origin. *Matter of Holt,* 40 B.R. 1009 (D.C.S.D.Ga.1984); *In re Bonhomme,* 8 B.R. 645 (Bankr.W.D.Okla.1981).

■ Dischargeability must be determined by the substance of the liability rather than the form. *In re Spong,* 661 F.2d 6, 9 (2nd Cir.1981).

■ The label placed on an obligation by the parties or a court is not necessarily determinative of its character as nondischargeable alimony, maintenance and support. *Matter of Benich,* 811 F.2d 943 (5th Cir.1987); *In re Doyle,* 70 B.R. 106 (9th Cir. BAP 1986); *Matter of Story,* 36 B.R. 546 (Bankr.M.D.Fla.1983). Although the label may be a factor to be considered it is not necessarily conclusive or dispositive and the test is the substance of the obligation and not the form or title. *In re Cowley,* 35 B.R. 520 (Bankr.D.Kan.1983). Thus, the label may be helpful in ascertaining the parties' and the state court's intention. *In re Altavilla,* 40 B.R. 938 (Bankr. D.Mass.1984). However, where necessary, a court must look beyond the language of the decree to the intent of the parties or the Court. *Shaver v. Shaver,* 736 F.2d at 1314, *supra; In re Yeates,* 807 F.2d at 878, *supra; In re Calhoun,* 715 F.2d at 1109, *supra; Melichar v. Ost,* 661 F.2d 300 (4th Cir.1981). Although the true intent of the parties rather than labels attached to an agreement or the application of state law controls, an examination of a written agreement is not precluded as persuasive evidence of intent. *Tilley v. Jessee,* 789 F.2d 1074 (4th Cir.1986). While the written agreement constitutes persuasive evidence of whether the debtor's obligation is a non-

dischargeable support obligation when the agreement is ambiguous the Court may look to extrinsic evidence to determine whether the debtor's obligation is nondischargeable. *In re Yeates*, 807 F.2d at 878, *supra.* The determination must be made by looking at the substance of the agreement "viewed in the crucible of the surrounding circumstances" *In re Crist*, 632 F.2d 1226, 1229 (5th Cir.1988). In the final analysis, a court must attempt to ascertain the parties' and the divorce court's intent in determining whether an obligation created in a divorce decree is dischargeable in bankruptcy. *In re Grimes*, 46 B.R. 84 (Bankr.D.Md.1985); *In re Bowers*, 43 B.R. 333 (Bankr.E.D.Pa.1984); *In re Pody*, 42 B.R. 570 (Bankr.N.D.Ala.1984); *Stamper v. Stamper*, 17 B.R. 216 (Bankr.S.D.Ohio 1982). In the context of a voluntarily executed marital agreement the proper test lies in whether the parties intended that the payment be for support rather than as a property settlement. *Matter of Long*, 794 F.2d 928 (4th Cir.1986).

Various federal courts have enumerated many tests, factors, and guidelines to determine whether or not a given obligation flowing from a divorce decree is in the nature of a property settlement and dischargeable, or is in the nature of support, maintenance and alimony and nondischargeable, when the debtor agrees or is ordered to assume a joint obligation of the debtor and an ex-spouse.

The Seventh Circuit has spoken on the issue in *Matter of Coil.* There the Court stated:

An indebtedness for a former spouse for alimony, maintenance, or support of the spouse or the couple's children which is memorialized in the divorce decree is not dischargeable in bankruptcy. 11 U.S.C. § 523(a)(5). An indebtedness in the divorce decree that merely divides the marital property, however, is dischargeable. *In re Maitlen*, 658 F.2d 466 (7th Cir.1981).

\* \* \* \* \* \*

In *In re Woods*, [561 F.2d 27, 3 B.C.D. 750 (7th Cir.1977)] we noted that in determining whether an obligation memori-

alized in a divorce decree is dischargeable, the bankruptcy court must attempt to effectuate the parties' or the divorce court's intent. We discussed four factors that might assist the bankruptcy court in discerning what the parties of (sic) the divorce court intended: (1) whether the settlement agreement includes provision for payments to the ex-spouse; (2) whether there is any indication that the hold-harmless provision was intended to balance the relative incomes of the parties; (3) whether the hold-harmless clause is in the midst of provisions allocating property; and (4) whether the hold-harmless provision describes the character and method of payment....

\* \* \* \* \* \*

*The Woods factors, however, are not exhaustive.* We noted in *Woods* that the bankruptcy court was forced to rely on these factors because there was no evidence in the record indicating what the divorce court or the parties intended.... (Emphasis supplied).

*Matter of Coil*, 680 F.2d 1170, 1171–72 (7th Cir.1982).

In *Coil*, the Seventh Circuit upheld the bankruptcy court's holding that the state divorce decree which required that the debtor pay and hold his former spouse harmless from certain marital bills was a nondischargeable debt. The debts were for the purchase of the parties' automobile, a water softener and for household goods. The state decree divided the marital property and ordered the Debtor to pay $20.00 a week in child support. The ex-spouse testified she was reluctant to execute the settlement agreement which was incorporated into the decree because she thought the support payment was too low; however, she did so agree because the debtor agreed to assume the majority of the outstanding marital debts. The court in pointing out that the *Woods* factors are not exhaustive, noted that in *Woods*, the court was forced to rely on the factors set out therein because there was no evidence in the record indicating what the divorce court or the parties intended. In *Coil*, the court noted

that there was such evidence based on the testimony of the ex-spouse.

In *Matter of Woods*, which was rendered prior to the date of the Indiana Dissolution of Marriage Act and the Bankruptcy Reform Act of 1978, the Debtor pursuant to a Separation Agreement incorporated into a Divorce Decree was ordered to indemnify and hold harmless the wife from certain debts such as to a Bank for siding and air conditioning, and to a finance company and a retailer for household goods, etc. The Court noted that the fact that the award was termed a "property settlement" and did not purport to grant "alimony" in the general sense is not dispositive for it is the *basis* for the creation of the obligation which determines whether it was intended as an equalization of property rights or as support and maintenance, *citing Nichols v. Hensler*, 528 F.2d 304 (7th Cir.1976), and *White v. White*, 338 N.E.2d 749 (Ind.App. 1975), *Matter of Woods*, 561 F.2d at 29–30, *supra*.

Thus, the Court must first look to the evidence and attempt to decide whether the parties or the divorce court intended the obligation to pay the debt was to be in fact and in substance in the nature of property settlement, or in the nature of support, and if no such evidence is presented or the intent cannot be gleaned from the record, the court must apply certain tests, including those set out in *In re Woods*, 561 F.2d 27, *supra*, which are not exhaustive.

The Court has undertaken to review the many factors applied by the federal courts in attempting to adjudicate this issue when the intent of the parties or the divorce court has not been clearly expressed as to the nature of the obligation.

As the Court in *In re Yeates* stated, the spouses need for support is a very important factor in determining the intent of the parties, and when the agreement is ambiguous, evidence that payment of the debt is necessary in order for the ex-spouse to maintain daily necessities such as food, housing, and transportation indicates that the parties intended the debt to be in the nature of support, *citing In re Calhoun*, 715, F.2d at 1109; *In re Yeates*, 807 F.2d at 879, *supra*. The Court should determine if the assumption had the *effect* of providing support *necessary* to ensure that the daily needs of the former spouse and any children of the marriage are satisfied, and the practical effect of the discharge of a loan on the dependent spouse's ability to sustain daily needs. If without the loan assumption the spouse cannot maintain the daily necessities of food, housing and transportation, the effect of the loan assumption may be found "in the nature of support". *In re Calhoun*, 715 F.2d at 1103, *supra*.

In *Yeates*, the court held that a secured home loan assumed by the debtor was not dischargeable where the evidence showed that such an agreement was necessary to enable former spouse to keep the house, one of the basic necessities of life. *See also, In re Calisoff*, 92 B.R. 346 (Bankr. N.D.Ill.1988); *In re Costell*, 75 B.R. 348 (Bankr.N.D.Ohio 1987); *In re Leupp*, 73 B.R. 33 (Bankr.N.D.Ohio 1987); *In re Mizen*, 72 B.R. 251 (Bankr.N.D.Ohio 1987); *In re Horton*, 69 B.R. 42 (Bankr.E.D.Mo. 1986); *Matter of Coverdale*, 65 B.R. 126 (Bankr.N.D.Fla.1986); *In re Winders*, 60 B.R. 746 (Bankr.N.D.Iowa 1986); *In re Delaine*, 56 B.R. 460 (Bankr.N.D.Ala.1985); *In re Wright*, 51 B.R. 630 (Bankr.S.D.Ohio 1985); *In re Britton*, 51 B.R. 323 (Bankr. N.D.Ind.1985); *Matter of Walter*, 50 B.R. 523 (Bankr.D.Del.1985); *In re Holland* 48 B.R. 874 (Bankr.N.D.Tex.1984); *Matter of Quinn*, 44 B.R. 622 (Bankr.W.D.Mo.1984); *In re Ploski*, 44 B.R. 911 (Bankr. D.N.H.1984).

The Court in *In re Calhoun*, 715 F.2d at 1110, *supra*, indicated that the Bankruptcy Court should look to factors such as the relative earning powers of the parties, their financial status, prior work experiences, and abilities, other means of support, and other factors relevant to the *substance of the result* achieved by the loan assumption to determine if the assumption is "in the nature of support" for purposes of federal bankruptcy.

Other courts have set out a whole laundry list of factors to be considered. For instance, the court in *In re Pody*, 42 B.R.

570 *supra,* stated it would consider the following factors:

1. Whether children were born of the marriage;
2. The parties' level of income;
3. Whether there was a division of property and a division of the debts relating to that property;
4. Whether the former spouse had shown need for additional support;
5. Whether the former spouse was shown to have suffered in the job market, or was otherwise disadvantaged, because of any dependent position held in relation to the debtor during the marriage; and
6. The age and health of the former spouse.

Additional factors have been applied. For instance the court in *In re Seidel,* 48 B.R. at 373, *supra,* considered in addition to other factors, the following:

1. Whether the agreement was intended to balance the relative incomes of the parties.
2. Position of the assumption within the agreement.
3. Character or method of payment.
4. The nature of the obligations.
5. Adequacy of support absent assumption of debt.
6. The parties' understanding and intent.

The court in *In re Altavilla,* 40 B.R. 938, 941 (Bankr.D.Mass.1984) stated that among other things it would consider the following:

1. Whether the payment was in installments over a considerable period of time or lump sum.
2. Length of marriage.
3. Fault of the parties.
4. Whether the debt was allocated in lieu of a greater alimony allowance.

*See also, In re Anderson,* 62 B.R. 448, 454–55 (Bankr.D.Minn.1986), and *In re Barnett,* 62 B.R. 661, 663 (Bankr.E.D.Mo. 1986) for a list of factors to be considered by the Court.

■ It is also clear that payments in the nature of support need not be made directly to the spouse or dependent to be nondischargeable. *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983).

The Seventh Circuit in the case of *In re Maitlen,* 658 F.2d 466 (7th Cir.1981), had occasion to construe a hold harmless provision as an Indiana Dissolution Decree, and affirmed the decision of the District Court for the reasons set forth in the District Court's opinion which the Seventh Circuit attached as Appendix A. In *Maitlen,* the Dissolution Decree incorporated a Property Settlement Agreement between the parties in which the Bankrupt agreed to make the mortgage payment as to the mortgage on the former marital residence which was awarded to the non-debtor wife. That obligation terminated upon the death or remarriage of the wife. The District Court decision which was approved by the Seventh Circuit stated as follows:

Division of property pursuant to a dissolution decree is treated as a debt dischargeable in bankruptcy proceedings. However, a provision for alimony or support is not dischargeable. *See* 11 U.S.C. § 523(a)(5) and its predecessor, former 11 U.S.C. § 35(a). The question in this case is whether the obligation to make mortgage payments was a support obligation or a property division. Since the dissolution in question occurred in 1974, it was pursuant to Ind.Code § 31–1–11.5–9, which became effective in 1973. That section eliminated the use of the word "alimony." Much Indiana case law on this question was decided under the prior statute; the decisions revealed a dichotomy as to the meaning of the term "alimony." *See* the discussion in *Nichols v. Hensler,* 528 F.2d 304, 307–08 (7th Cir. 1976). However, in determining whether an obligation is a liability for support, the court must look to the substance of the obligation and not to labels imposed by state law. *Shacter v. Shacter,* 467 F.Supp. 64 (D.Md.), *aff'd,* 610 F.2d 813 (4th Cir.1979). Indiana decisions under prior statutes can still be considered for the distinctions they drew between property division and support, without regard to use of the term "alimony." Under the

current Indiana statute, what was formerly termed alimony must be classified as either property distribution or maintenance. *See Johnson v. Johnson,* [174 Ind.App. 408] 367 N.E.2d 1147 (Ind.App. 1977). The United States Court of Appeals for the Seventh Circuit in *In re Woods,* 561 F.2d 27 (7th Cir.1977), made a thorough consideration of Indiana law under the prior Indiana statute on the question of what distinguishes a property division from a support obligation. Since the prior Indiana decisions remain valid in regard to this question, *In re Woods,* provides the guidelines for the court in this case.

The obligation to make mortgage payments appears in paragraph 4 of what is styled a "Property Settlement Agreement" entered into by and between plaintiff and defendant on September 11, 1974. However, the use of such a term is "not dispositive." *In re Woods,* 561 F.2d at 29. It is apparent that the agreement in question did not concern itself solely with the division of property, despite the terms by which the agreement was identified. Paragraph 3 of the agreement provides that the husband will provide the wife a specified periodic sum for child support.

\* \* \* \* \* \*

The obligation in this case further differs from the obligation in *Woods* [561 F.2d 27 (7th Cir.1977)] in that the agreement in *Woods* said nothing about termination of the husband's obligation to pay the debts. In contrast, paragraph 4 of the agreement in this case stated: "The obligation of the Husband to make said mortgage payments and to satisfy said mortgage indebtedness shall terminate upon the death or remarriage of the Wife prior to payment of said indebtedness in full." Termination of an obligation of the husband upon death or remarriage of

the wife is an indication that the obligation is support rather than a division of property. *See Stanford v. Stanford,* [170 Ind.App. 203] 352 N.E.2d 93, 94–95 (Ind.App.1976); *White v. White,* [167 Ind. App. 459] 338 N.E.2d 749, 754–55 (Ind. App.1975).

\* \* \* \* \* \*

That paragraph 3 of the agreement in question provides that the husband will pay child support in certain amounts does not preclude the possibility that the mortgage payments provided in paragraph 4 would constitute support to the child or to the wife.

\* \* \* \* \* \*

The Order of July 7, 1980 [of the Bankruptcy Court] was clearly incorrect in its application of an Indiana Statute. That order stated:

The provision in the decree which "ordered" the parties to perform the agreement appears to have amounted to nothing more than approving it. The decree does not contain anything to show that the court awarded support for the wife. In fact, the court could not have awarded her support after the dissolution without first finding, pursuant to an Indiana statute, that she was physically or mentally incapable of supporting herself.

The reference is to *Ind.Code* 31–1–11.5–9(c), dealing with final decrees of dissolution. That section states:

(c) The court may make no provision for maintenance except that when the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of such incapacitated spouse to support himself or herself is materially affected, the court may make provision for the maintenance of said spouse during any such incapacity, subject to further order of the court.[2]

---

**2.** In 1984, I.C. 31–1–11.5–9(C) was amended and rewritten by P.L. 150–1984, sec. 1, and now provides as follows:

(C) The Court may order maintenance in final decrees entered under subsections (a) and (b) after making the finding required under Section 11(e) on this Chapter.

Indiana Code 31–1–11.5–11(e) provides as follows:

(e) A court may make the following findings concerning maintenance:

(1) If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to

It is correct that the decree entered by the Tippecanoe Superior Court on November 20, 1974, contained no finding of incapacity. However, no such finding is necessary when an award of maintenance is based upon agreement of the parties. *Ind. Code* 31–1–11.5–10 provides in pertinent part:

Agreements.—(a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for the maintenance of either of them, the disposition of any property owned by either or both of them and the custody and support of their children.

(b) In an action for dissolution of the marriage the terms of the agreement if approved by the court shall be incorporated and merged into the decree and the parties ordered to perform them, or the court may make provisions for disposition of property, child support, maintenance, and custody as provided in this chapter....

Since the decree in this case was based on an agreement, the absence of a finding of incapacity does not indicate that the agreement as incorporated into the decree could not provide for maintenance or support for the wife.

This court, however, does not base its reversal of the order entered July 7, 1980 primarily on the incorrect reference in

that order to the Indiana statute. Rather, for all the reasons set forth above, that order is incorrect in its general construction of the agrement in question and in its application of statutory and case law to that agreement.

*Id.* at 468–471 (Appendix A: District Court Memorandum of Decision and Judgment Order).

The Seventh Circuit in *Maitlen* upheld the entire decision of the District Court, and, in addition, stated as follows:

This court has recently considered the issue of dischargeability of a debt arising out of an Indiana dissolution decree and settlement. *In re Woods* [561 F.2d 27 (7th Cir.1977)]. *Woods* enunciates principles for guidance in the interpretation of such agreements. Although certain of Indiana's substantive laws have been amended since the *Woods* facts developed, we believe the principles announced there are still valid.

This case turns on the interpretation of paragraph 4 of the Maitlens' "Property Settlement Agreement."

After careful review, we conclude that the District Court has properly interpreted the agreement and correctly applied the law under *Woods*. We, therefore, affirm the decision of the District Court for the reasons set forth in its opinion, which we attach as Appendix A.

*Id.* at 467.

The Court notes that the Decree expressly provided, among other things, at rhetori-

support himself is materially affected, the court may find that maintenance for that spouse is necessary during the period of incapacity, subject to further order of the court.

(2) If the court finds a spouse lacks sufficient property, including marital property apportioned to that spouse, to provide for that spouse's needs and that spouse is the custodian of a child whose physical or mental incapacity requires the custodian to forego employment, the court may find that maintenance is necessary for that spouse in an amount and for a period of time as the court deems appropriate.

(3) After considering:

(A) the educational level of each spouse at the time of marriage and at the time the action is commenced;

(B) whether an interruption in the education, training, or employment of a spouse

who is seeking maintenance occurred during the marriage as a result of homemaking or child care responsibilities, or both;

(C) the earning capacity of each spouse, including educational background, training, employment skills, work experience, and length of presence in or absence from the job market; and

(D) the time and expense necessary to acquire sufficient education or training to enable the spouse who is seeking maintenance to find appropriate employment;

a court may find that rehabilitative maintenance for the spouse seeking maintenance is necessary in an amount and for a period of time that the court considers appropriate, but not to exceed three (3) years from the date of the final decree.

cal paragraph 2 thereof that pending final submission of the evidence on the property disposition, the Debtor would pay the ex-wife $500.00 a month; that the ex-wife would have exclusive use and possession of the marital residence, and that the Debtor would continue to make the mortgage payments on the marital residence.

It is also noted that at rhetorical paragraph 11 of the Agreement the Debtor agreed to waive any credits he might have for "maintenance payments" made to ex-wife pursuant to the November 3, 1982 Decree.

 In looking at the substance and basis of Clause two of the Agreement rather than the label affixed thereto, it is clear to this Court that the intention of the parties was that the ex-wife was to be provided with one of the very basic necessities of life, i.e. shelter, and that the awarding of the marital home to her and the Agreement by the Debtor to pay the existing mortgage thereon was the method chosen to accomplish this goal. The basis for the creation of this obligation was to balance the relative incomes and earning power of the parties.

It is true that the obligation to pay the mortgage did not cease upon the death or remarriage of the ex-wife, and while this factor is some indicia that the Agreement relating to the mortgage was not intended as spousal maintenance or support, that one factor alone is certainly not conclusive when all of the facts and circumstances surrounding this dissolution are considered.

The ex-wife was unemployable because of heart surgery and in her mid-forties at the time of the dissolution. She was not employed prior to her marriage, and except for two years when she assisted the Debtor in his business she was a housewife and thus not only was not physically able to support herself, she did not have the education and experience to obtain gainful employment of any significance to pay the mortgage. She testified that her primary concern in the dissolution proceedings was that she have a "roof over her head", while her dissolution attorney testified that in negotiating the Agreement his concern was to provide a place for the ex-wife to reside, and for the Debtor to pay the mortgage in light of her health problems and the inability to support herself. The Agreement had the effect of providing maintenance necessary to ensure the daily needs of the ex-wife were met in the form of housing, and without the payment of this joint debt by the Debtor the ex-wife could not maintain the same.

The Debtor was ordered on November 3, 1982 to pay $500.00 a month maintenance in the Decree until the Agreement had been approved by the Court. This was after the ex-wife had filed a Notice of Intent to Present Evidence of Disability on October 27, 1987.

When the Decree was entered, the ex-wife agreed that the Notice of Intent was moot and should be overruled. It appears that the Notice of Intent was stipulated as moot by the ex-wife's attorney on the basis that the Debtor would pay the $500.00 a month in maintenance, and the mortgage payment in lieu of litigating the disability issue.

When the Agreement was subsequently approved by the Court as part of the Decree, the $500.00 in maintenance was deleted. It is apparent to the Court that this was done because the Agreement further provided that the ex-wife would receive title to the marital residence and the Debtor would pay the mortgage thereon. This is the end result of the overall "package" that Capp attempted to achieve in the Agreement. Accordingly, the Court finds that the Agreement to insure that the ex-wife be provided with this necessity of life, i.e. shelter, is in the nature of spousal maintenance and nondischargeable as such under § 523(a)(5).

The Court would note that the placement of the provisions in the Agreement relating to the residence and the mortgage at rhetorical paragraphs 1 and 2 indicate somewhat their primary importance to the ex-wife and that there followed thereafter distinct segments at rhetorical paragraphs 3 through 8, and 12 in the nature of separate property settlement provisions. The hold-harmless agreement is not found in the midst of the

property settlement provisions. The $10,-000.00 and $36,000.00 payments were clearly awarded to the ex-wife as a property settlement for her share of the Debtor's business, and that award was for a separate and distinct purpose from that relating to the mortgage.

As noted by the District Court in *In re Maitlen*, I.C. 31–1–11.5–10, provides that the parties can enter into agreements as to maintenance which can be incorporated into the dissolution decree. Since the Agreement relating to the mortgage payments was not labeled either a property settlement or a maintenance agreement, and is somewhat ambiguous as to its true nature, the parol evidence of the ex-wife and Capp in explaining its purpose was admissible. The Court finds their testimony to be reliable and credible, and concludes that the ultimate purpose of the Agreement by the Debtor to pay the mortgage was in the nature of nondischargeable maintenance based on federal standards.

The fact that the Debtor had no obligation to pay any child support or other direct payments to the ex-wife does not require a contrary holding. Given the Debtor's physical condition, age and employment history it is clear that the true basis of the Agreement upon which the Debtor agreed to pay the mortgage was that it was in lieu of spousal maintenance, and thus is in the nature of maintenance and nondischargeable.[3] It is therefore,

ORDERED, ADJUDGED AND DECREED that the obligation of the Debtor to pay the mortgage, including insurance and taxes on the former marital residence as set out in rhetorical paragraph 2 of the Agreement is nondischargeable.

---

**3.** The Court would note that this conclusion is based on the state of affairs at the time that the Agreement was approved by the State Court, and not the "present needs" of the ex-wife at the time of the trial of this adversary proceeding. The Bankruptcy Court has no authority to consider alleged changed circumstances of the ex-wife in determining dischargeability. *Forsdick v. Turgeon,* 812 F.2d 801 (2nd Cir.1987); *In re Jenkins,* 94 B.R. 355 (Bankr.E.D.Pa.1988); *Matter of Rowles,* 66 B.R. 628 (Bankr.N.D.Ohio 1986); *In re Fryman,* 67 B.R. 112 (Bankr.E.D.Wis.1956).