GRIFFIN, Judge,
concurring in part, dissenting in part.
I concur in the majority’s conclusion that husband’s bankruptcy did not divest wife’s entitlement to post-petition pension payments, but I also believe the trial court erred in finding the use of husband’s pension to pay the second mortgage on the marital home was part of a property settlement rather than support. If state law were applicable to this case, I would agree with my colleagues that the record could support the lower court’s “property settlement” finding. However, this is a question which must be determined primarily with reference to federal bankruptcy law.[1] The bankruptcy code provides that an obligation in the nature of alimony, maintenance or support, is nondischargeable in bankruptcy[2] and federal courts have taken a very strict approach to bankruptcy discharge of such marital dissolution obligations. In deciding whether an obligation is support, a court is not bound by either a state law definition or the characterization contained in the parties’ dissolution decree; the court must determine what function the award was intended to serve. In re Maune, 133 B.R. 1010, 1013 (Bankr. E.D.Mo.1991). Where the trial court fails to apply the correct federal law to decide this issue, it is appropriate to remand the issue to the trial court to reconsider in light of the controlling law. In re Calhoun, 715 F.2d 1103 (6th Cir.1983).
In an extensive body of law, the federal courts have developed a catalogue of indi-cia to distinguish support from a true “property settlement.”[3] See, e.g., In re Peterson, 133 B.R. 508, 511 (Bankr.W.D.Mo.1991); In re Pattie, 112 B.R. 437 (Bankr.M.D.Fla.1990); In re Hill, 133 B.R. 126, 130 (Bankr.N.D.Ind.1989). Bankruptcy courts have consistently held that an obligation that serves to maintain a former spouse’s daily necessities, such as food, housing and transportation, are support, notwithstanding the characterization in the agreement. In re Yeates, 807 F.2d 874, 879 (10th Cir.1986); Calhoun, 715 F.2d at 1109. Also, the agreement of one party to be responsible for a joint debt qualifies for maintenance or support if, without the debt assumption, the spouse would be inadequately supported. Martin v. Martin, 832 P.2d 390 (Nev.1992). “The great weight of authority” holds that a spouse’s duty to make mortgage payments on the former marital residence is an obligation in the nature of support, nondischargeable in bankruptcy, if the former spouse resides *493 there.[4]
In this case, the marital home that wife received in the divorce was subject to two mortgages. Wife testified that she had been self-employed as a tailor, but at the time of the divorce her health was extremely poor since she had recently had lung cancer and had had surgery to remove half of one lung. She had been unable to maintain her former income and, without her husband’s retirement income to pay the second mortgage, she could not have met both the first and second mortgage payments on the marital home. Until their separation, husband had been contributing between $2,900 and $3,160 per month to the household in addition to the payments he made on the business; wife drew $1,800 from her business. No one established any value for either business. Upon separation, the trial court had awarded husband’s $760 monthly retirement income to wife as temporary support. Wife testified that her husband “knew that I could not generate that much capital to pay the second mortgage. And he knew that I had worried about paying that.” She also testified that her waiver of alimony assumed she would receive the $760 per month in support until the second mortgage was paid off.
Husband testified he was paying the second mortgage because he had been making more money at the time of the divorce, commercial property was worth more at that time and he was “just distributing the money back to Mrs. Connor.” Husband acknowledged that since his bankruptcy he was acting as an unpaid “consultant” for a pest control business being operated by his new wife on the commercial property where his (now defunct) pest control business had been located.
The trial judge who heard the matter was not the judge who entered the original divorce decree. At the conclusion of the hearing, the trial court asked husband’s counsel if there had been an equitable distribution of the parties’ assets when the parties entered into their settlement agreement at the time of the divorce judgment. Husband’s counsel represented at the hearing that the $760 monthly pension payments to wife were due to a discrepancy between the equitable distribution made to the parties which resulted from the fact that husband’s business was considered more valuable. Wife’s counsel disagreed and stated that no valuing of assets had been attempted when the settlement was reached, nor had they ever prepared an equitable distribution sheet.
The court entered a final judgment in favor of husband, ruling that the payments *494 to wife had been discharged in bankruptcy. The final judgment stated:
1. That the court specifically finds that the parties entered into an equitable distribution agreement. That it was un-controverted that the equitable distribution was genuinely equal on both sides and that the clause was contained in a separate and distinct paragraph, drafted by the Former Wife’s attorney and this Former Wife testified that she had sufficient time to read and analyze this agreement, specifically Paragraph 5 of the Separation and Property Settlement Agreement dated December 29, 1989.
2. That there was contained within the agreement a specific and clear waiver of spousal support entitled “Waiver of Alimony” in Paragraph 14.
In this case, the key factors cited by the trial judge relate principally to the language contained in the settlement agreement.[5] However, as the federal cases consistently recognize, the terminology used in dissolution agreements lacks the accuracy and precision required to determine whether any particular obligation is support or an equitable division of property. See, e.g., In re Orr, 99 B.R. 109 (Bankr.S.D.Fla.1989) (notwithstanding language in separation agreement whereby wife waived claims for alimony or support, husband’s obligations were nondischargeable support). I would prefer to remand this matter to the trial court to apply the proper test under federal bankruptcy, law to determine dischargeability. The basis on which we have reversed the discharge of post-petition pension payments was not presented to the trial court nor argued on appeal. If, after remand, the court were again to reach the conclusion that these payments are part of a property settlement, the court should enter an order that only unpaid pre-petition sums are subject to discharge.

. The legislative history appended to the section states, "What constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law.” Historical and Revision Notes, 11 U.S.C. § 523.

. Section 523(a)(5) of the Bankruptcy Code provides that;
(a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
******
(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement.agreement, but not to the extent that—
******
(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

. Such judicial contortions have been necessary because the bankruptcy code does not recognize that support and property distributions are often confused or intertwined in separation agreements or divorce judgments under state law. See Pamela Belt, Bush v. Taylor: A New Exception to Discharge In Bankruptcy, 144 Ark.L.Rev. 757, 760 (1991).

. In re Gianakas, 917 F.2d 759, 764 (3d Cir.1990) (bankruptcy court did not err by finding that debtor’s obligation for second mortgage on former marital residence was in nature of support where husband conveyed marital home to wife, she assumed responsibility for first mortgage and she testified that if she had to pay for second mortgage, she could not continue to live in home). See also Yeates, 807 F.2d 874 (second home loan assumed by debtor was in nature of support where evidence showed that agreement was necessary to enable former spouse to keep marital home); Calhoun, 715 F.2d at 1109 (home loan was nondischargeable where necessary to insure daily needs of spouse were met); Hill, 133 B.R. 126 (debtor’s obligation to pay off mortgage on marital residence where wife continues to reside constituted nondischargeable support obligation); In re Szuch, 117 B.R. 296 (Bankr.N.D.Ohio 1990) (obligation to assume second mortgage on marital residence was support obligation since assumption had effect of providing necessary support to ensure that daily needs of former spouse were satisfied); In re Kornguth, 111 B.R. 525 (Bankr.W.D.Pa.1990) (debtor’s assumption of second mortgage on marital residence was in nature of support, although it arose under section of agreement labeled equitable property distribution); In re Coverdale, 65 B.R. 126 (Bankr.M.D.Fla.1986) (obligation imposed on debtor by divorce decree to make second mortgage payments on residence awarded to wife was support obligation); Buccino v. Buccino, 397 Pa.Super. 241, 580 A.2d 13 (1990) (recognizing general rule). The few cases which have found that the mortgage payments involved therein were discharge-able concerned cases in which either the payee spouse did not intend to live in the marital home, In re Bedingfield, 42 B.R. 641 (Bankr.N.D.Ga.1983), or involved a situation where the wife was awarded substantial alimony apart from the mortgage payments, In re Grijalva, 72 B.R. 334 (Bankr.S.D.W.Va.1987), although the fact that the payments continue beyond death or remarriage has been considered dispositive. In re Marriage of Wisdom, 833 P.2d 884 (Colo.Ct.App.1992); In re Kaufman, 115 B.R. 435 (Bankr.E.D.N.Y.1990).

. The other factor was that "it was uncontro-verted that the equitable distribution was genuinely equal on both sides.” In fact, this statement was controverted by wife’s attorney and, in any event, there is no evidence in the record from which this determination could be made.